**Christina DINGLE, Plaintiff,**

v.

**Christine LAM, in her capacity as Food Stamp Coordinator for the State of Hawaii, and Andrew Chang, in his capacity as Director, Department of Social Services and Housing, State of Hawaii, Defendants.**

**Civ. No. 77–0112.**

United States District Court,
D. Hawaii.

Aug. 4, 1977.

---

**4.** It does not appear when or under what circumstances Raines came into possession of the Barden statement dated 9–29–75.

**1174**

Linda-Mei Leong, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiff.

James P. Dandar, Deputy Atty. Gen., Ronald Y. Amemiya, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, Chief Judge.

This case involves the interpretation of federal regulations governing the termination of food stamp benefits.[1] The regulations at issue define the extent of a recipient's right to continued assistance pending a fair hearing on the merits of a proposed termination of that assistance by the state.

### I.

On March 3, 1977, plaintiff Christina Dingle, a food stamp recipient since 1965, received a notice dated March 2, 1977, from the Department of Social Services of the State of Hawaii. The notice informed Ms. Dingle that effective April, 1977, she would no longer receive food stamp assistance. Pursuant to state regulation, Ms. Dingle was given an opportunity to file a request for a hearing concerning the proposed termination. If the request were made within 15 days, she would continue to receive food stamps pending the outcome of the hearing.[2] In a letter dated March 7, 1977, Ms. Dingle attempted to request a hearing

---

1. This case involves food stamps only. For a similar discussion in reference to other forms of welfare assistance, see *Almeida v. Chang*, 434 F.Supp. 1177, Civ. No. 77–0151 (D. Hawaii, filed August 4, 1977).

2. Hawaii Public Welfare Manual (HPWM) § 3851.4 provides in part:

    Prior to any action to reduce or terminate a household's program benefits . . . the EW shall . . . provide the household 10 days advance notice before such action is taken. . . .

HPWM § 3863 provides in part:

    If a household requests a hearing during the 10-day advance notice period, participation shall be continued on the basis authorized immediately prior to the notice of adverse action. . . .

Ms. Dingle was given 15 days, instead of the ten provided by these state regulations, because other benefits, not at issue here, were also terminated.

on the validity of the proposed termination. On March 21, 1977, she discovered that for a still unexplained reason the state had not received her request. On March 22, 1977, she mailed a copy of her March 7 request to the state. It received this latter request on March 23, 1977. Although the state granted her request for a hearing, it refused to provide her with continued assistance pending the disposition of her appeal because her request was not filed within 15 days from the date of the notice of termination.

On May 13, 1977, Ms. Dingle, on behalf of herself and all others similarly situated,[3] filed a second amended complaint challenging this state practice insofar as it denied continued food stamps pending appeal for those who make a request for a hearing at any time before the effective date of a proposed termination. Alleging that this policy violated applicable federal regulations, the complaint sought a declaration that the rule is invalid and an injunction prohibiting the state from enforcing it. The case is now before me on the plaintiff's motion for summary judgment.

## II.

The plaintiff claims that the state's policy violates the Department of Agriculture's food stamp regulations as set forth in 7 C.F.R. section 271.1(n) (1976). 7 C.F.R. section 271.1(n)(1) (1976) provides in part that:

> Prior to any action to reduce or terminate a household's program benefits within the certification period, the State agency shall . . . provide such household 10 days' advance notice before such action is taken.

And 7 C.F.R. section 271.1(n)(4)(i) (1976) further provides that:

**3.** On May 25, 1977, this court certified that Ms. Dingle represented the class consisting of all past, present, and future food stamp recipients who:

> a.) Receive written notice of termination of their food stamp benefits; and
> b.) File a fair hearing request between the date of notice of termination and the date when benefits would normally be next paid; and

> If a household requests a hearing during the advance notice period, its participation in the program shall be continued on the basis authorized immediately prior to notice of adverse action.

The resolution of the plaintiff's claim depends on whether or not section 271.1(n)(4)(i) should be interpreted so as to allow the state to provide for a 15-day "advance notice period" which is scheduled without regard to the date when the action to terminate will occur. If so, then the state's policy of terminating food stamp assistance if a request is not made within 15 days of the date of notice of termination is legal. A contrary interpretation would require the state to fix the advance notice period in relation to the date the action to terminate takes place. Thus, regardless of how long the period was, it would have to include the ten days before termination. These regulations are not free from ambiguity and no court has yet had the chance to define the "advance notice period."[4] In my opinion, however, the term "advance notice period" should be interpreted in relation to the date of termination, not in relation to the date the notice of termination is mailed to the recipient.

I reach this conclusion for a number of reasons. First of all, section 271.1(n)(1) makes reference to "advance notice" in terms of its relation to the date of action to terminate. This date is most important to both the recipient and the state. On that date, the recipient's food stamps are scheduled to run out and yet for the first time the state need not provide more. It makes more sense to define the advance notice period with reference to this important date than with reference to whichever date the state chooses to mail out the notice.

> c.) Are denied food stamp benefits pending a fair hearing.

**4.** For discussions of these regulations in another context, see *Basel v. Knebel*, 551 F.2d 395 (D.C.Cir. 1977), *rev'g sub nom. Basel v. Butz*, 66 F.R.D. 54 (D.D.C.1975); *Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976).

Furthermore, I find it incongruous to consider the recipient's request for a hearing to be "timely" for purposes of obtaining a hearing on the merits, but untimely for purposes of insuring continued assistance pending the decision of that hearing. If the government had intended this result, it could have said so in a much clearer fashion. While the hearing process drags on, the recipient has been effectively terminated.

Finally, an interpretation of the "advance notice period" used in section 271.1(n)(i) cannot be constructed without consideration of the Supreme Court's decision in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In that case, the Court held that procedural due process usually requires some form of hearing before a recipient's general welfare benefits are cut off.[5] Although it may be constitutional to require a food stamp recipient to take action before benefits are continued pending a hearing,[6] *cf. Barrett v. Roberts*, 551 F.2d 662 (5th Cir. 1977), *Goldberg's* result influences me to construe ambiguities in continued assistance regulations in favor of the recipient. Absent a clear governmental intent, I cannot define the "advance notice period" without regard to the date of termination. I therefore hold that the "advance notice period", as used in 7 C.F.R. section 271.1(n)(4)(i) (1976), is a period of at least 10 days which must extend from the date the notice is sent until the date action to terminate is effective.[7] *See also Almeida v. Chang*, 434 F.Supp.

1177, Civ. No. 77–0151 (D. Hawaii, filed August 4, 1977).

To avoid summary judgment in this case, the state strenuously argued that the action to terminate Ms. Dingle's food stamp assistance occurred on March 18, 1977, when the state programmed its computer to terminate Ms. Dingle's April benefits. Thus, even if all time prior to March 18 were included, Ms. Dingle's March 22 request still came too late. I cannot accept the state's position that the "action" occurred at this time rather than at the time when the termination was to become effective. The computer program was merely an instruction to take action on the effective date. Furthermore, I note that in the context of other forms of welfare the date of action to terminate is explicitly defined as "the date upon which the action would become effective." 45 C.F.R. section 205.10(a)(4)(i)(A) (1976). I see no reason to treat food stamps differently. Using the date the action becomes effective also promotes certainty since a recipient's request for continued assistance does not then depend upon whichever date the state gets around to programming its computer. I hold that the action to terminate occurred in April when the termination became effective, *i. e.,* when the food stamps would have been next issued.

### III.

Since Ms. Dingle's March 22 request for a fair hearing came within the advance notice period, as interpreted above, she is entitled

---

**5.** I refer to *Goldberg* only as an aid to interpretation. In light of my interpretation of the regulations, the question of what procedures, if any, are constitutionally required before a termination of *food stamp* benefits can occur need not be reached at this time. Nevertheless, I note that at least one circuit court of appeals has indicated that due process requirements must be applied. *Banks v. Trainor*, 525 F.2d 837, 841–42 n.2 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). *Cf. Basel v. Knebel*, 551 F.2d 395 (D.C. Cir. 1977). *See also Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**6.** I express no opinion on that issue.

**7.** The only alternative interpretation would be to hold that the advance notice period must include the ten days prior to termination, plus any additional time that the state by regulation allows. Since HPWM § 3863 allows the ten days after notice, or in Ms. Dingle's case 15 days, see note 2, *supra,* this interpretation could result in a strange situation when the state sends out the notices more than 25 days in advance of termination. The recipient would be able to request continued assistance for 15 days, then could not so request, and then would be able to do so again. I prefer to interpret the advance notice period to include all the time between the date of notice and the date of termination.

to summary judgment on her claim. An appropriate order will issue declaring the state's policy invalid under federal regulations and enjoining the enforcement of that policy against members of the plaintiff class.