TLC HOME HEALTH CARE,
L.L.C., Appellant,

v.

IOWA DEPARTMENT OF HUMAN
SERVICES, Appellee.

No. 00–0255.

Supreme Court of Iowa.

Jan. 24, 2002.

Robert Holz and Judith Boes of Davis, Brown, Koehn, Shors, & Roberts, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Janet Hoffman, Assistant Attorney General, for appellee.

STREIT, Justice.

This is an appeal from a ruling on judicial review of agency action by the Iowa Department of Human Services pursuant to Iowa Code section 17A.19 (1999). The district court affirmed the decision by an administrative law judge that had been adopted as the final agency decision. The administrative law judge's decision upheld the validity of the agency order finding that TLC Home Health Care, Inc. could not recover Medicaid payments at the rate of almost $14,000 per month for home health services rendered to Ardeth Blackwell and could not recover Medicare payments for the same services under Medicare's insulin services exception. We find the Department's denial of TLC's claims under the Medicare insulin services exception was supported by substantial evidence. We also find the Department is required to provide home health care services on both a part-time and intermittent basis. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Facts

Ardeth Blackwell is an eighty-three-year-old woman suffering from diabetes. She has numerous other chronic illnesses. Due to some of these conditions, Blackwell is unable to administer her own insulin injections. She has no family willing or able to assist her with the injections. TLC Home Health Care provided home health care visits to Blackwell. Those visits in-

cluded skilled nursing services providing Blackwell with insulin injections twice a day, with additional necessary injections depending on her blood glucose level. TLC charged nearly $14,000 a month to provide these home health care visits.

TLC first billed Medicare for the home health care services TLC provided to Blackwell. Medicare requires a person be considered homebound before he or she is eligible for Medicare coverage. *See* 42 U.S.C. § 1395f(a)(2)(C). Since Blackwell was not considered homebound, Medicare denied payment. Medicare is the primary source of payment for medical assistance for someone qualifying for both programs. After a denial of payment by Medicare, then an individual applies to Medicaid for coverage.[1] Accordingly, TLC then billed Medicaid for the home health visits. Medicaid will pay for the services if the applicable Medicaid regulations are satisfied. In Blackwell's case, Medicaid similarly refused payment because these particular home health visits were not a covered service under the Iowa Medicaid statutes.[2]

TLC appealed to the Iowa Department of Human Services and an administrative law judge affirmed the denial of the claims. The judge determined TLC's claims were not covered under Medicaid because Blackwell's care was not intermittent as required by the Iowa Medicaid statutes. Further, the court found the Medicare insulin exception for the homebound did not apply because TLC continually argued Blackwell was not homebound. TLC sought review of the judge's conclusions from the director of the Department of Human Services. The director affirmed the denial of the claims. TLC then petitioned for review in the district court and the court likewise affirmed. TLC appeals.

On appeal, TLC contends the Department erred in denying its claim for Medicaid payments because the federal Medicaid statute requires coverage of home health care services on both part-time and intermittent bases. TLC further argues the Medicare insulin exception applies to Blackwell. TLC contends the Department's decision to deny the claims was not supported by substantial evidence and is unreasonable, arbitrary, and an abuse of discretion. The Department characterizes this case as a cost-containment case and argues it involves inappropriate claims for unauthorized services under Iowa Medicaid policies.[3]

## II. Scope of Review

 Judicial review of agency action is guided by Iowa Code section 17A.19(8) (1999). Our review is limited "to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function." *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 676 (Iowa 2000). The district court, as well as this court, is bound to the administrative law judge's findings of fact if they are supported by substantial evidence. *IBP, Inc. v. Iowa Employment Appeal Bd.*, 604 N.W.2d 307, 311 (Iowa 1999). Evidence is substantial if a reasonable person would

---

1. Blackwell is eligible for both the Medicare and Medicaid program.

2. The Department denied TLC's claims because they did not meet the statutory requirements for intermittent skilled nursing services. "Intermittent services for skilled nursing services shall be defined as a medically predictable recurring need requiring a skilled nursing service at least once every 60 days, with an attempt to have a predictable end." 441 Iowa Administrative Code rule 78.9(3).

3. The Department does not contest the reasonableness of the costs of the home health services TLC provided to Blackwell.

find it adequate to reach a conclusion. *Id.* The district court acts "in an appellate capacity to correct errors of law on the part of the agency. In our review of such action by the district court, we merely apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court." *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 161–62 (Iowa 1987) (citations omitted). If our conclusions are the same, we must affirm. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). When an agency interprets its own regulations, it is entitled to substantial deference. *See, e.g., Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 94–95, 115 S.Ct. 1232, 1236, 131 L.Ed.2d 106, 116 (1995); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405, 415 (1994).

> Under section 17A.19(8), relief may be granted only if agency action was "unreasonable, arbitrary, or capricious," or is characterized by abuse of discretion. To be arbitrary or capricious, the agency action must be taken without regard to the law or consideration of the facts of the case. To constitute abuse of discretion, the action must be unreasonable and lack rationality.

*Allen v. State, Dep't of Personnel*, 528 N.W.2d 583, 587 (Iowa 1995) (citations omitted).

### III. The Merits

TLC first contends the Department's denial of TLC's claim for Medicaid payments is contrary to the applicable federal statutes and regulations. TLC also contends the Department's decision to deny TLC's claim for Medicaid payments was not supported by substantial evidence. Finally, TLC argues the Department's decision to deny TLC's claim for Medicaid payments is unreasonable, arbitrary, and an abuse of discretion. We first examine whether Iowa Medicaid law covers both intermittent and part-time home health care services. We then address whether the Medicare exception for insulin regulation applies in this case.

### A. Part-time Versus Intermittent Home Health Care Services

TLC argues the Department's interpretation of Iowa's Medicaid regulations directly conflicts with federal Medicare and Medicaid statutes. Additionally, TLC contends the services provided by TLC comply with both Iowa and federal law and should be covered by the Department. Finally, TLC contends if we uphold the Department's interpretation of 42 Code of Federal Regulations section 440.70, we must invalidate Iowa Administrative Code rule 441–78.9 because it directly conflicts with federal Medicaid statutes. Because it conflicts with federal law, TLC asserts we should apply Medicare regulations and overturn the agency finding denying TLC payment under Medicaid.

Before we turn to the merits of this issue, we first briefly examine the Medicaid program. The roots of Medicaid are found in federal legislation that became effective in 1967, which made grants available to the states for state-administered medical assistance programs. 42 U.S.C. §§ 1396 *et seq.* Medicaid is a "cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals." *Madrid Home for the Aging v. Iowa Dep't of Human Servs.*, 557 N.W.2d 507, 511 (Iowa 1996) (citing 42 U.S.C. § 1396 (1994)); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455, 462 (1990). The Medicaid program was established by Congress as part of Title XIX of the Social Security Act. 42

U.S.C. §§ 1396–1696q. Medicaid is designed to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980). States electing to participate in Medicaid must develop state Medicaid plans consistent with the federal Medicaid statute, regulations, and administrative rules. *Id.* As a condition of receipt of federal Medicaid funds, a state plan must comply with federal laws and regulations. *See Madrid Home for the Aging,* 557 N.W.2d at 511 (citing *Wilder,* 496 U.S. at 502, 110 S.Ct. at 2513, 110 L.Ed.2d at 462). To qualify for federal assistance, a state must establish a plan and submit it to the Health Care Financing Administration (HCFA) for approval. *Id.* Upon approval of the state plan, the federal government will reimburse the state for a percentage of the program's expenses, including administrative costs and other program-related expenses. *Madrid Home for the Aging,* 557 N.W.2d at 511 (citing *Connecticut Hosp. Ass'n v. Weicker,* 46 F.3d 211, 213 (2d Cir.1995)).

We now turn to the issue before us. At the heart of this issue is 42 Code of Federal Regulations section 440.70 which defines covered home health services, in part, as follows:

Home Health Services.

(a) "Home health services" means the services in paragraph (b) of this section that are provided to a recipient—

(b) Home health services include the following services and items. Those listed in paragraphs (b)(1), (2), and (3) of this section are required services; those in paragraph (b)(4) of this section are optional.

(1) Nursing service, as defined in the State Nurse Practice Act, that is provided on a part-time or intermittent basis by a home health agency as defined in paragraph (d) of this section, . . . .

42 C.F.R. § 440.70.

TLC contends this section requires states to provide home health care services on both a part-time *and* intermittent basis. The Department maintains the phrase "part-time or intermittent" permits states to provide services either on a part-time *or* intermittent basis. Because the Department has adopted such a construction of 42 Code of Federal Regulations section 440.70, it chose to provide nursing services through home health agencies only on an intermittent basis. Iowa Administrative Code rule 441–78.9(3) provides, in part:

*Skilled nursing services.*

. . . Skilled nursing services shall be available *only on an intermittent basis.* Intermittent services for skilled nursing services shall be defined as a medically predictable recurring need requiring a skilled nursing service at least once every 60 days, not to exceed five days per week (except as provided below), with an attempt to have a predictable end. Daily visits (six or seven days per week) that are reasonable and necessary and show an attempt to have a predictable end shall be covered for up to three weeks. Coverage for additional daily visits beyond the initial anticipated time frame may be appropriate for a short period of time, based on the medical necessity of service. . . . Daily skilled nursing visits which are ordered for an indefinite period of time and designated as daily skilled nursing care do not meet the intermittent definition and shall be denied.

Iowa Administrative Code rule 441–78.9(3) (emphasis added). To determine whether 42 Code of Federal Regulations section 440.70 permits the states to choose the basis upon which they will provide ser-

vices, we must refer to our rules of statutory construction.

■ It is a basic rule of statutory construction that we must "give effect, if possible, to every clause and word of a statute." *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615, 624 (1955) (citing *Inhabitants of the Township of Montclair v. Ramsdell*, 107 U.S. 147, 153, 2 S.Ct. 391, 395, 27 L.Ed. 431, 433 (1883)). Upon examination of the words of the statute, we find four elements of the statute determinative of this issue. First, section 440.70(a) begins by stating the information in the section shall define what "home health services means." Then, section 440.70(b) explicitly states "home health services *include the following* services and items." (Emphasis added.) Finally, this subsection also clearly states the services and items in paragraph (b)(1) are *"required* services." (Emphasis added.) Paragraph (b)(1) addresses nursing services provided on a "part-time or intermittent" basis.

■ The focus of statutory construction is to give effect to the intent of Congress. We first look to the plain language of the statute to establish this intent. In doing so, we give a plain, ordinary meaning to words, phrases, and punctuation. 3 Norman J. Singer, *Sutherland Statutory Construction* § 72.04, at 303 (5th ed. rev. vol.1992). In general, we attribute ordinary meaning to the words of a statute, unless there is contrary congressional intent. There is a presumption that no part of an act is intended to be superfluous and all parts of a Medicare statute are read as a whole. *Id.* § 72.04, at 304. In general, we construe Medicaid statutes in favor of coverage for the recipient. *See, e.g., Cowan v. Myers*, 187 Cal.App.3d 968, 995, 232 Cal.Rptr. 299, 316 (1986), *cert. denied*, 484 U.S. 846, 108 S.Ct. 140, 98 L.Ed.2d 97 (1987). We now turn to the textual cues we have been given by Congress.

■ First, Congress used the phrase "home health services means." The intent behind this phrase was to restrict the definition of home health services to those things specifically stated in the statute. Second, Congress chose to use the phrase "home health services include the following." The word "include" can enlarge the meaning of a word or it can function as a restriction. *State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 283 (Iowa 2001). "Where a general term is followed by the word 'including,' which is itself followed by specific terms, the intent may be one of limitation." *Id.* Here, Congress used the word synonymously with "means" or "comprise." There is little doubt the legislative intent was to use the word "include" in the sense of limiting or restricting the class of covered home health services. The statute continues on to state the services and items listed in paragraph (b)(1) are required. This obligation read together with paragraph (b)(1) provides nursing services provided on a part-time or intermittent basis are required. The final step in this analysis requires us to determine the meaning of the word "or" within this context. In interpreting a statute, we will not rely too heavily upon characterizations such as "disjunctive" or "conjunctive" forms to resolve difficult issues, but we will look to all parts of the statute. 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.05, at 203 (5th ed. rev.vol. 1992). Given the words and phrases preceding "or" in this particular statute, we conclude "or" means both and is used as a word of inclusion, rather than exclusion. In this context, we will not give "or" disjunctive character. There is nothing in the text that makes part-time nursing services inapplicable to this statute section.

Also important to our interpretation of this statute is the fact that remedial legislation, such as Medicaid, is ordinarily construed in favor of coverage for the recipient. *See, e.g., Dingle v. Lam*, 434 F.Supp. 1173, 1176 (D.C.Haw.1977); *Cowan*, 232 Cal.Rptr. at 316; *Baez v. Bane*, 220 A.D.2d 166, 173, 633 N.Y.S.2d 765, 769 (1995). The principal goal of Medicaid is to further the best interests of eligible recipients. Given this perspective, we may not construe this statute as providing Iowa discretion to limit the type of covered skilled nursing services. In requiring states to cover both part-time and intermittent services, the statute promotes the best interests of the recipient by covering the most appropriate care for each individual's circumstances. Thus, the statute requires the states to provide skilled nursing services to recipients. Skilled nursing services are those services provided on either a part-time or intermittent basis, as is necessary.

Congress could have used a number of different words and phrases and intended the result urged by the Department. However, the four provisions discussed above are included in the statutory language and must be given meaning. Given these textual cues, it is not possible to interpret this statute in such a way as to permit the states to choose which nursing services it will provide. The statute clearly directs the states to provide both intermittent and part-time nursing services. In covering only intermittent services, the Iowa statute conflicts with the federal statute.

We therefore reject the Department's implementation of 42 Code of Federal Regulations section 440.70. Since the Iowa Medicaid statute must be consistent with the Federal Medicaid statute, we invalidate only that portion of the Iowa Medicaid statute that is inconsistent with 42 Code of Federal Regulations section 440.70. We further remand with instructions that coverage be determined in accordance with the lawful interpretation of the Federal Medicaid statute requiring coverage for both part-time and intermittent services.[4] We also note that a determination of whether TLC's claims qualify for coverage under part-time skilled nursing services requires the district court on remand to determine what constitutes eight hours of skilled nursing services.[5]

### B. Medicare's Exception for Insulin Services

█ TLC argues it is also entitled to coverage under the Medicare exception to

---

4. The Iowa Medicaid statute must include coverage for skilled nursing services offered on a part-time basis. Since Iowa Medicaid does not define "part-time," the Medicare definition of part-time applies pursuant to Iowa Administrative Code rule 441–79.9. Medicare defines part-time as follows:

> A. Definition of Part-time.—Part-time means any number of days per week:—
> Up to and including 28 hours per week of skilled nursing and home health aide services combined on a less than daily basis;
> -Up to 35 hours per week of skilled nursing and home health aide services combined which are provided on a less than daily basis, subject to review by fiscal intermediaries on a case by case basis, based upon documentation justifying the need for and reasonableness of such additional care; or
> -Up to and including full-time (i.e., 8 hours per day) skilled nursing and home health aide services combined which are provided and needed 7 days per week for temporary, but not indefinite, periods of time of up to 21 days with allowances for extensions in exceptional circumstances where the need for care in excess of 21 days is finite and predictable.

Home Health Agency Manual 11, § 206.7A.

5. We do not rule on this particular issue. The district court did not consider the issue of the definition of "eight hours" in its ruling on petition for judicial review of the Department's actions.

the intermittent requirement allowing coverage for insulin injections. Medicare provides an exception to the intermittent requirement for skilled nursing services that permits daily home health care services for insulin injections. Medicare Guide to Billing for H[ome] H[ealth] A[gencie]s, at 38 (Jan. 1, 1997). Medicare contains a blanket requirement that a patient be considered homebound to be eligible for coverage under Medicare. *See* 42 U.S.C. § 1395f(a)(2)(C). The Medicare insulin injection exception to intermittent care accordingly requires that a patient be declared homebound to be eligible for coverage under this exception. Iowa's Medicaid law does not provide an exception for insulin injections. TLC contends because Medicaid does not contain such an exception that it is silent on the issue; therefore, the Department must follow Medicare law and read the insulin injection exception into the Iowa Medicaid statute. We disagree and conclude Medicaid is not silent on the issue.

We must determine, from the words of the statute, if the Iowa Medicaid statute precisely addresses which skilled nursing services shall be covered in the state plan. Here, we must interpret what the legislature included, as well as excluded, in the Iowa Medicaid statute. We must give meaning to all of the terms included in the statute.

Federal Medicare defines Medicare coverage of services which includes an exception allowing coverage for insulin injections. This allowance for insulin injections is an exception to coverage under the Medicare intermittent services require-

ment. If an individual does not qualify for coverage under the intermittent requirement, he or she may apply for coverage under the insulin injection exception to this provision. The Iowa Medicaid statute also defines which services shall be covered in Iowa Administrative Code rule 441–78.9(3). This section clearly defines what constitutes covered "skilled nursing services." It also provides an exception for additional daily visits beyond the allowed three-week time period for services based on the medical necessity of the service. Finally, this section concludes by clearly stating there are no other exceptions to the intermittent definition under which skilled nursing services will be provided. The language of the Iowa Medicaid statute does not speak "of vague generalities but in precise terms." *See Thomas Jefferson Univ.*, 512 U.S. at 517, 114 S.Ct. at 2389, 129 L.Ed.2d at 418. The Department was well within its discretion in interpreting this statute as to impose substantive restrictions on which services are considered covered skilled nursing services. *See id.* If we interpret the statute otherwise, it would allow the Department to create de facto a new exception to the intermittent requirement.

Given the words of the statute, it cannot be said the Iowa Medicaid statute is silent on the issue of coverage of Medicaid services. If the legislature intended an exception for insulin injections, it would have included the exception in Iowa Administrative Code rule 441–78.9(3). However, noticeably absent from the list of covered skilled nursing services is any mention of an exception for insulin injections.[6] Gen-

---

**6.** Iowa Administrative Code rule 441–78.9(3) was amended on October 4, 2000. The amended section explicitly includes coverage for insulin injections. The section provides, daily skilled nursing visits or *multiple visits for* wound care or *insulin injections* shall be

covered when ordered by a physician and included in a plan of care. Other daily skilled nursing visits which are ordered for an indefinite period of time and designated as daily skilled nursing care do not meet

erally, there is an inference that omissions are intentional. 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25, at 234 (5th ed. rev.vol.1992). Under the doctrine of inclusio unius est exclusio alterius, we will exclude from operation items not included in a list of elements that are given effect expressly by statutory language. *Id.* If the legislature intends such an exception, it is its duty, not the court's, to provide the exception in the statute. Even if the legislature intended Medicaid to contain such an exception, as TLC contends, that is not clear from the words of the statute. We cannot and will not infer such a meaning and we decline to read the Medicare insulin injection exception into the Iowa Medicaid statutes.

Even assuming arguendo the Iowa Medicaid statute is silent on whether to allow an exception for insulin injections, our conclusion is still the same. TLC asserts if the state Medicaid statute is silent on whether to allow an exception for insulin injections, we must defer to the Medicare policies. As a result, TLC contends we must read the insulin injection exception into the state Medicaid statute. In support for this contention, TLC primarily relies on Iowa Administrative Code rule 441–79.9 which provides "Medicare definitions and policies *shall apply to services provided* unless specifically defined differently...." (Emphasis added.) TLC interprets this rule based on testimony from Connie Banks, a program manager in the Division of Medical Services at the Department of Human Services. Banks stated, "[I]f the administrative rules that govern the policies of the Department of Human Services addressed an issue, then that would take precedence over the Medicare,

... guidelines. If the administrative rules are silent, then the Medicare guidelines would be followed."

TLC misconstrued Banks' testimony and consequently incorrectly interpreted Iowa Administrative Code rule 441–79.9 to mean Medicaid must cover all of the services Medicare explicitly covers, but which are not explicitly included in the Medicaid statutes. Instead, this section means Medicare policies and definitions apply to services already explicitly provided for and covered by Medicaid. For example, if Medicare and Medicaid contain a similar policy provision, but Medicaid does not define a crucial word in the provision while Medicare provides such a definition, the Medicare definition should be applied. It does not mean all services and benefits provided by Medicare, but absent in Medicaid, must be included in Medicaid statutes.

In conclusion, nothing in the statute suggests each state is required to include the insulin injection exception in its particular state Medicaid plan. This issue depends on a particular state's Medicaid coverage policy. At the time in question, Iowa had elected not to include this exception and we will not read it into the statute. The court ruled on the insulin injection exception issue, considering all of the evidence including Banks' statements, and ruled against TLC. We find there was substantial evidence for the court to make factual findings and conclusions contrary to TLC's contentions. We affirm.

## IV. Conclusion

We find substantial evidence to support the Department's finding that the Medi-

---

the intermittent definition and shall be denied.
Iowa Administrative Code rule 441–78.9(3) (emphasis added). The amendment of this statute does not affect our analysis of the

issues before us on appeal. Rather, we must decide these issues based on the statutes in effect at the time TLC rendered its services to Blackwell.

care insulin injection exception does not apply to allow TLC to recover its claims for Blackwell's home health care services. We reject the Department's implementation of 42 Code of Federal Regulations section 440.70 finding it is unreasonable, arbitrary, and an abuse of discretion. We invalidate only that part of the Iowa Medicaid statute in conflict with the federal Medicaid statute. We further remand this case with instructions that coverage be determined in accordance with the lawful interpretation of the federal Medicaid statute as it requires coverage for both part-time and intermittent services.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**