# IN THE COURT OF APPEALS OF IOWA

No. 21-0229
Filed March 2, 2022

**DANTE KWAN RHODES,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

The applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**

Martha Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Dante Rhodes appeals the denial of his application for postconviction relief (PCR) following his conviction for two counts of delivery of a controlled substance (heroin). As he did at the district court, Rhodes contends he is entitled to relief because he received ineffective assistance from trial counsel. Specifically, Rhodes maintains his trial counsel breached an essential duty that resulted in prejudice to Rhodes by failing to move (1) for dismissal of the underlying criminal charges because the statute of limitations had lapsed and (2) for suppression of evidence obtained during the execution of a search warrant that was not supported by probable cause.

**I. Background Facts and Proceedings.**

In December 2010, the State filed a criminal complaint against Rhodes for two counts of delivery of heroin that were alleged to have occurred on April 12, 2010. A warrant issued for Rhodes's arrest the same day, but he was not apprehended until police in Wisconsin arrested him on unrelated charges in March 2014 and then, after the Wisconsin charges were resolved, the Wisconsin police delivered Rhodes to Iowa law enforcement on April 1, 2014.

The State filed the trial information charging Rhodes with twice delivering heroin in violation of Iowa Code section 124.401(1)(c)(1) (2009), a class "C" felony, on May 16, 2014—more than four years after the alleged offenses.

In December 2016,[1] Rhodes entered *Alford* guilty pleas[2] to both charges pursuant to a plea agreement he entered into with the State. As part of the agreement, the State recommended Rhodes be given two suspended ten-year sentences, which would run concurrently if his probation was revoked in the future. The court followed the joint recommendation in sentencing Rhodes, and he was placed on probation for two to five years.

One month after he was sentenced, on March 9, 2017, the State filed a report of probation violation after Rhodes was arrested on new charges.

On March 29, with the probation revocation pending, Rhodes filed a pro se notice of appeal, stating he wanted to challenge his convictions and sentences. A three-judge panel of the Iowa Supreme Court concluded his appeal was untimely and dismissed it.

Rhodes eventually stipulated to the revocation of his probation[3] and the court imposed the original concurrent, ten-year sentences.

Rhodes filed a pro se application for PCR in May 2018. He was appointed counsel and later filed an amended application.

---

[1] The delay was caused by Rhodes's failure to appear for trial on the charges in 2015. Another warrant for his arrest was issued, and he was not apprehended until October 2016.

[2] *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) (allowing a defendant to plead guilty to a charge even if they are "unwilling or unable to admit [their] participation in the acts constituting the crime").

[3] This was part of a plea agreement; a number of other charges against Rhodes were dismissed as part of the agreement, and he was allowed to serve time for a federal sentence concurrently with his state sentences.

The PCR trial was scheduled to take place in March 2020. By agreement of the parties, the case was submitted to the district court without live testimony; it was decided on the written depositions, exhibits, and trial briefs.

In February 2021, the district court concluded Rhodes failed to prove his trial counsel provided ineffective assistance and denied Rhodes's application. The court found Rhodes's testimony he lived in Iowa from 2010 until 2014 "to be not credible." Alternatively, the court also noted that even if there was some evidence to support Rhodes's claim he lived in Iowa throughout (meaning there was "arguably merit" to the claim counsel should have filed a motion to dismiss), filing a motion to dismiss was not guaranteed to get the charges dismissed; and filing the motion likely would have jeopardized the trial attorney's ability to get Rhodes such a favorable plea agreement—suspended, concurrent sentences even after Rhodes absconded from 2015 to 2016. As to his second ineffective-assistance claim, the court concluded there were sufficient facts to establish probable cause for the search warrant, so a motion to suppress would have been unsuccessful.

Rhodes appeals.

## II. Standard of Review.

While the denial of a PCR application is generally reviewed for correction of errors at law, we engage in de novo review when the applicant's claims are constitutional in nature. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011). The right to effective assistance of trial counsel is constitutional, so we review Rhodes's claims de novo. *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) ("The Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution guarantee the right to 'effective' assistance of counsel.").

**III. Discussion.**

Rhodes maintains he received ineffective assistance from trial counsel. "[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011). To prove breach of essential duty, Rhodes has the burden to prove "his trial attorney performed below the standard demanded of a 'reasonably competent attorney.'" *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We presume "the attorney performed competently and proceed to an individualized fact-based analysis." *Id.* We are more likely to find counsel breached his or her duty "when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* We will not second guess "counsel's reasonable tactical decision[s]." *Id.* To prove prejudice, Rhodes must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A showing that the error 'conceivably could have influenced the outcome' of the proceeding is not enough." *Lamasters*, 821 N.W.2d at 866 (quoting *Strickland*, 466 U.S. at 693). Importantly, "[w]e may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Id.* (citation omitted).

**A. Statute of Limitations.**

Except for some charges not at issue here, the State generally must prosecute a felony within three years after its commission. *See* Iowa Code § 802.3; *State v. Howard*, 610 N.W.2d 535, 536 (Iowa Ct. App. 1999). But the statute of

limitations tolls during the time when the offender is "not publicly resident within the state." Iowa Code § 802.6(1) ("When a person leaves the state, the indictment or information may be found within the time herein limited after the person's coming into the state, and no period during which the party charged was not publicly resident within the state is a part of the limitation.").

In his PCR action, Rhodes maintained he lived in Iowa from 2010—at the time of the offenses—until 2014. Based on this assertion, he argues trial counsel had a duty to file a motion to dismiss the underlying criminal charges because he was charged outside the three-year statute of limitations. As Rhodes notes, if trial counsel had filed the motion to dismiss, the State would have had the burden to prove the statute of limitations had been suspended. *See Howard*, 610 N.W.2d at 536. In other words, it would have been the State's burden to prove Rhodes was not publicly resident in Iowa for more than thirteen months since the delivery of heroin on April 12, 2010, so that the three-year statute of limitations had not lapsed as of the May 16, 2014 filing of the trial informations.[4] If the State could not do so, the charges against Rhodes would have been dismissed, and he would not have entered guilty pleas.

However, because this claim was brought under the ineffective-assistance framework, Rhodes has the burden to prove a motion to dismiss would have been successful. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) ("We will

---

[4] A little more than forty-nine months passed between the date of the offenses on April 12, 2010, and the filing of the trial informations on May 16, 2014. And the statute-of-limitations period ran any time Rhodes was publicly resident in Iowa. So, to prove the informations were filed within the three-year window, the State would have been required to prove Rhodes was not publicly resident in Iowa for more than thirteen months between April 12, 2010, and May 16, 2014.

not find counsel incompetent for failing to pursue a meritless issue."). So, to succeed on his claim, Rhodes must prove he was publicly resident of Iowa for at least three years between the date of the offenses and before he was charged by trial information.

From our review of the limited case law on Iowa Code section 802.6, we have found no definition or interpretation of what it means to be "publicly resident." Rhodes encourages us to conclude the statute of limitations requires "only . . . that a person is living and present in Iowa, not that they establish and maintain a stable, single household in the state for three years." He points us to the lay definition of resident: "Living in a place for some length of time." *Resident*, Merriam-Webster, https://www.merriam-webster.com/dictionary/resident (last visited Feb. 14, 2022). And he argues for this broad definition so as not to "punish the most vulnerable of people: those suffering from housing instability and indigency." But this suggestion ignores the modifier "publicly" before the word "resident" in section 802.6(1).

Because one must be "*publicly* resident" in the state for the statute of limitations to run, we do not believe mere presence in the state is sufficient. *See* Iowa Code § 802.6(1) (emphasis added); *see also TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 713 (Iowa 2002) ("It is a basic rule of statutory construction that we must 'give effect, if possible, to every clause and word of a statute.'" (citation omitted)); *cf. State v. Sher*, 437 N.W.2d 878, 881 (Wis. 1989) ("[T]he time during which the actor was not publicly a resident within the state is subtracted (e.g., he may have resided elsewhere, or in this state secretly and in concealment)."). But even if we accept Rhodes's proffered definition, his claim of ineffective assistance for failure to file a motion to dismiss

cannot succeed because Rhodes failed to prove he lived in Iowa for at least three years between the commission of the offenses and when he was charged by trial information.[5]

In his PCR deposition, Rhodes testified his home was in Iowa from 2009 until 2014. That home was not a single, stable residence; he moved around with his girlfriend Tiffany between Dubuque and Ottumwa and also lived at Ken's house in Dubuque—Ken was "like a godfather" to him. But this testimony is at odds with statements Rhodes made contemporaneous to his 2014 arrest and to the person preparing the presentence investigation (PSI) report in 2017 following his guilty pleas. On April 1, 2014, Rhodes told the investigator for the public defender's office that he lived in Dubuque from 2010 to 2012 but had lived in Milwaukee most of his life. He also reported having a job in Milwaukee but stated that he "probably lost" it due to being extradited and arrested. The notes on his prisoner booking record say Rhodes planned to stay with Ken in Dubuque—"confirmed for 1 week"—suggesting Rhodes needed a place to stay after being extradited to Iowa because he did not have a residence. Additionally, Rhodes told the PSI preparer that he lived in Dubuque from approximately 2005 to 2010 and then lived in

---

[5] Because we are not required to do so for this case, we decline to decide what constitutes "publicly resident" within section 802.6(1).

Still, we note Rhodes did not have his own residence in Iowa, never obtained an Iowa driver's license, and never registered to vote in Iowa. In his deposition for the PCR action, Rhodes testified he was "sure" he received mail in Iowa between 2010 and 2014. But the only physical evidence of receiving mail that Rhodes offered at the PCR hearing was an April 30, 2014 response to his application for benefits from the Iowa Department of Human Services and a May 30, 2014 paystub. The former was sent before Rhodes was charged but after Wisconsin extradited Rhodes to Iowa on April 1, 2014. And the latter was sent both after the extradition and after Rhodes was charged; it has no evidentiary value regarding where Rhodes lived during the pertinent time period.

Milwaukee, Wisconsin, from 2010 to 2016. While these two statements are at odds with each other, neither support Rhodes's testimony he lived in Iowa from 2009 to 2014. Additionally, Rhodes received a traffic ticket from Waukesha County police (near Milwaukee) in November 2013. His ticket was due to having more than one driver's license. He had both a Wisconsin and an Arizona driver's license—he never obtained an Iowa license. And then, in March 2014, Rhodes was arrested by Waukesha County police, who later extradited Rhodes to Iowa. Rhodes was present near Milwaukee for both his November 2013 and March 2014 involvements with Wisconsin police, and the case details from each list Rhodes as living at a Milwaukee address.

Rhodes's mother and his cousin both testified by way of deposition in the PCR action, and each testified as to their belief Rhodes lived in Iowa between 2010 and 2014. But Rhodes's mother lived in Minnesota throughout, and neither his mother nor his cousin ever actually visited Rhodes in Iowa. Each based their testimony Rhodes was not living in the Milwaukee area on Rhodes's statements to them and their belief he would not be able to hide that from them or their family who lived there. But when asked about Rhodes's November 2013 arrest in Waukesha County, his mother testified, "We weren't surprised. We didn't even know he was—really didn't know he was even . . . back in the city because sometimes [Rhodes] would go in and out." And his cousin was not aware Rhodes was working in Milwaukee in 2014. Plus, both testified their family wanted Rhodes to quit his "street life" and go to drug treatment, which Rhodes did not want to do—giving Rhodes a reason to be less than forthcoming with his family if he was living nearby.

We agree with the district court that Rhodes's testimony he lived in Iowa from 2009 to 2014 is not credible,[6] and none of the other evidence he offered established he lived in Iowa for three years during the pertinent time period. Rhodes cannot prove a motion to dismiss would have had merit, so we cannot say counsel had an essential duty to file the motion. This claim of ineffective assistance fails.

**B. Motion to Suppress.**

Next, Rhodes claims his trial counsel had a duty to file a motion to suppress the evidence obtained during the execution of the search warrant because the warrant was not supported by probable cause.

"The existence of probable cause to search a particular area depends on whether a person of reasonable prudence would believe that evidence of a crime might be located of the premises of the area searched." *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). "The task of the judge issuing the search warrant is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit' presented to the judge, there is a fair probability that law enforcement authorities will find evidence of a crime at a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). "A finding of probable cause depends on 'a nexus between criminal activity, the things to be seized and the place to be searched.'" *Id.* (citation omitted). In making that

---

[6] *See Shaffer v. State*, No. 19-0950, 2021 WL 592914, at *6 n.6 (Iowa Ct. App. Jan. 21, 2021) (applying a less deferential standard to the district court's credibility finding when "the district court had only a transcript of the deposition of the trial attorney—not a live witness—and therefore had the same information we do when determining credibility"). Here, the court reviewed only written testimony.

determination, the issuing court "may rely on reasonable, common-sense inferences from the information presented." *Id.*

In our review of the issuing court's decision, "[w]e do not make an independent determination of probable cause, but only determine whether the basis existed for finding probable cause." *Id.* In doing so, "we are limited to consideration of only that information, reduced to writing, which the applicant presented to the court at the time of the application for the warrant." *Id.* But "we draw all reasonable inferences to support a court's finding of probable cause" and "[c]lose questions are resolved in favor of the validation of the warrant." *Id.*

The PCR court found there was a basis for finding probable cause to support the warrant, stating:

> The application established that the affiant, Investigator John Jason Pace of the Dubuque Police Department, had, at that time, nine years of experience as a patrolman and two and a half years of experience working with the Dubuque Drug Task Force. Through that experience, he had come to understand a significant number of things about the manufacture and sale of illegal drugs.
> On April 12, 2010, Andrew Beeler met with Pace and told him he had been purchasing heroin from a Black male who was bald and in his 30's or 40's and went by the name of Dante. The Task Force then surveilled Beeler, who parked his vehicle on Center Place (a Dubuque street). Pace approached Beeler and told him he knew he had just purchased heroin. Beeler gave Pace a package of heroin and a syringe. Beeler told Pace that he had entered "'Dante's' and Tiffany's residence on Center Place to retrieve the heroin." He also said that Dante had just gotten back into town with more heroin to sell. The "residence" Beeler was referring to was determined to be 1122 Center Place, Apt. 5 in Dubuque. A records check revealed that it was the residence of Tiffany Jackson.
> . . . .
> The information provided by Beeler was more than enough to establish probable cause. He gave a general description of Rhodes and identified him by his first name. He gave a personal account of obtaining heroin from Rhodes after being seen in an area of a residence where it was later determined that Rhodes was present. He knew the owner of the residence to be named Tiffany, which was

> corroborated by a police records search. He provided the police with the heroin he had obtained from Rhodes.
>
> Rhodes argues that that search warrant contained no information establishing that Beeler was credible. However, the facts set forth in the application make it clear that the information was corroborated.

On appeal, Rhodes complains the court should have viewed Beeler's information with more skepticism, suggesting Beeler was only cooperating with police for selfish reasons. *See State v. Weir*, 414 N.W.2d 327, 331 (Iowa 1987) ("Courts have generally applied higher standards of proof when weighing the reliability of tipsters who act for money, leniency or some other selfish purpose than when considering the reliability of the citizen informer whose only motive is to help law officers in the suppression of crime."). But, as the State argues, nothing in the record before us establishes Beeler was helping the police for selfish purposes, and the warrant application does not treat him as a confidential informant. *See* Iowa Code § 808.3 ("[I]f the grounds for issuance [of the search warrant] are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant."); *see also Weir*, 414 N.W.2d at 331 (concluding "the 'specified reasons' requirement of section 808.3 was intended by the legislature to apply only when the informant is not named in the application and accompanying affidavits").

However, if we were to treat Beeler as an informant who had something to gain by providing information to the police, we would consider these factors to determine whether the information provided by him was sufficiently reliable:

(1) "whether the informant was named"; (2) "the specificity of [the] facts detailed by the informant"; (3) "whether the information furnished was against the informant's penal interest"; (4) "whether the information was corroborated" by other information known to law enforcement; (5) "whether the information was not public knowledge"; (6) "whether the informant was trusted by the accused"; and (7) "whether the informant directly witnessed the crime or fruits of it in the possession of the accused."

*State v. McNeal*, 867 N.W.2d 91, 102–03 (Iowa 2015) (quoting *Weir*, 414 N.W.2d at 332).

Beeler was named; he provided a physical description of Rhodes and knew it was Tiffany's home that he had visited. Beeler admitted buying heroin to the officer. Police officers were able to corroborate the owner of the home matched the name given by Beeler, were handed the drugs and syringe Beeler had just purchased, and saw him leave the area from which he purported to buy the drugs. Most of the factors are met, and we conclude Beeler's information was sufficiently reliable for the district court to rely on it in finding probable cause to support the warrant. Because there is a basis for the district court's issuance of the warrant, a motion to suppress would not have been successful. So Rhodes failed to prove his counsel breached a duty in not filing a motion to suppress, and this claim of ineffective assistance fails.

**IV. Conclusion.**

Like the district court, we conclude Rhodes's claims of ineffective assistance of trial counsel fail. We affirm the denial of his application for PCR.

**AFFIRMED.**