**STATE of Iowa, Appellee,**

v.

**Milton WEIR, Appellant.**

No. 86–749.

Supreme Court of Iowa.

Oct. 21, 1987.

As Corrected Nov. 20, 1987.

**328**

Charles L. Harrington, Appellate Defender, and Dory A. Sutker and James F. Whalen, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase and Roxann Ryan, Asst. Attys. Gen., John W. Criswell, Co. Atty., for appellee.

NEUMAN, Justice.

This is an appeal by defendant Milton Weir from the judgment and sentence imposed upon his conviction, following jury trial, of three counts of murder in the first degree and one count of robbery in the first degree, in violation of Iowa Code sections 707.2 and 711.2 (1985). The sole question presented for our review is whether the district court properly overruled defendant's pretrial motion to suppress incriminating evidence seized pursuant to a warrant allegedly issued without probable cause and in violation of Iowa Code section 808.3 (Supp.1985). Finding no reversible error, we affirm the convictions.

## I. *Background Facts and Proceedings.*

On November 26, 1985, the slain bodies of Kenny Easter, LoRae McCuddin and six-year-old Dustin McCuddin were discovered in their rural Warren County home by a friend, Rosland Reynolds. Examination of the bodies revealed that Kenny Easter was shot four times with a .357 Colt Python revolver and once with a .410 shotgun. The other two victims were each killed by a single shot to the head, fired from the .357.

DCI special agent David Fees was assigned to investigate the case. After making contact with other law enforcement agencies, and the victims' family and associates, Fees came upon a significant lead on November 28, 1985. Betsy Douglas, sister-in-law of a Polk County sheriff's deputy, told him that she knew the two individuals who committed the crime. One was her live-in boyfriend Larry Simpson and the other was defendant Milton Weir.

According to an affidavit subsequently furnished by Fees in support of his application for a warrant to search Weir's car and residence, Douglas related the following facts implicating Weir in the crime. On November 24 she entered her Des Moines apartment to find both Simpson and Weir. When Weir left, Simpson showed Douglas a large quantity of cocaine. Simpson then told Douglas that he and Weir had robbed Kenny Easter, obtaining entry to his residence on the pretext of using the telephone. In the course of the robbery Weir "went crazy and killed all of them," "blow[ing] Kenny's head off" in the process. Firearms, drugs and approximately $8000 cash were taken in the robbery. The drugs and guns had already been split between Simpson and Weir.

Douglas further advised Fees that she observed a .357 Magnum revolver and a .42 caliber handgun in Simpson's possession plus marijuana, three pounds methamphetamines, 2500–3000 tulenols and $8000 cash in the apartment. On each of the two days following November 24, Weir reportedly came over to the apartment and stated "It's not in the paper yet, they must not have found them." Douglas also told Fees that she knew Weir was a karate instructor

at Plaza Lanes in Des Moines and drove a small brown four-door vehicle with an automatic transmission.

Fees' affidavit also cited his conversation with Ronda Wagner, sister of Betsy Douglas. She reportedly told Fees that she had been in Simpson's apartment that day and observed Weir "with a blue automatic pistol shoved down his pants and a blue Smith and Wesson .22 caliber revolver in his hand." She also reported observing an automatic carbine, a bag of marijuana, hashish, dilaudids, needles and spoons. She also observed Weir's car, which she described as a small brown Chevrolet Chevette, parked behind Simpson's apartment.

Fees personally observed the small brown automobile parked behind Simpson's apartment and traced its registration to J.T. Weir. Other law enforcement officers confirmed that Weir taught karate at Plaza Lanes Fitness Center.

A second attachment to the affidavit recited that on December 3, 1985, special agent C.R. Wood advised Fees that during an interview with Larry Simpson, Simpson advised that he had recently helped move Weir to his parents' residence in Bedford, Iowa. All Weir's possessions, legal and illegal, were reportedly moved there. Fees subsequently observed the bronze Chevrolet Chevette at the residence in Bedford.

On the strength of the foregoing affidavit, magistrate Jack Campbell issued a search warrant on December 3, 1985, authorizing the search of defendant Weir's person, automobile and parents' residence. Items to be seized were specifically confined to the contraband described in the affidavit. When the warrant was executed, substantial evidence linking Weir to the crime was found, including a partially dismantled .357 Colt Python revolver (later positively identified as the murder weapon), a .410 shotgun, ammunition for both guns, the remains of a custom-made ring given Kenny Easter by Rosland Reynolds, a can of mace and a large baggie of marijuana.

Defendant Weir filed a motion to suppress all the evidence seized in the search, claiming (1) that the warrant was illegally executed, (2) that the warrant was issued without probable cause, and (3) that the warrant was insufficient on its face because it contained no indication that informant Betsy Douglas had given reliable information on previous occasions or that her information was credible.

The trial court overruled defendant's motion, summarily rejecting defendant's claim that the warrant was illegally executed. The court found the warrant to have been issued upon probable cause based on the record made before the magistrate.

The case proceeded to trial by jury. On this appeal from the resulting convictions, defendant renews his challenge to the legality of the search warrant. He contends that the warrant was issued without an inquiry or finding concerning the veracity of Douglas or Wagner, that information attributed to these informants must therefore be excised from the warrant application, and that without this information the application and attachments do not furnish constitutional justification for the search.

## II. *Standard of Review.*

Because Weir challenges the search warrant on constitutional grounds, we are obliged to review de novo the facts and circumstances which led to its issuance. *State v. Seiler,* 342 N.W.2d 264, 266 (Iowa 1983). We are limited in our review to a consideration of only that information, reduced to writing, which was actually presented to the magistrate at the time application for the warrant was made. *State v. Seager,* 341 N.W.2d 420, 426 (Iowa 1983).

We are further guided in our examination by the now-familiar holding of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 79 L.Ed.2d 527, *reh'g denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), which clarified that

[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that a magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 79 L.Ed.2d at 548 (citation omitted). Applying this standard in *State v. Bishop,* 387 N.W.2d 554, 557 (Iowa 1986), we also recognized our duty to give deference to the magistrate's finding. *Id.* at 558. Due to the preference for warrants, doubts are resolved in favor of their validity. *Id.*

Our own decisions pertaining to search warrants have consistently applied the following test for determining the existence of probable cause: whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there. *State v. Sykes,* 412 N.W.2d 578, 583 (Iowa 1987); *State v. Woodcock,* 407 N.W.2d 603, 604 (Iowa 1987); *State v. Seager,* 341 N.W.2d at 426–27. Probable cause to search requires a probability determination as to the nexus between criminal activity, the things to be seized and the place to be searched. *Seager,* 341 N.W.2d at 427. The quantum of information needed to establish probable cause is less than required for conviction. *State v. Bousman,* 387 N.W.2d 605, 609 (Iowa 1986). But mere suspicion, rumor or even "strong reason to suspect" a person's involvement with criminal activity is inadequate to establish probable cause. *See Seager* 341 N.W.2d at 427–28.

### III. *Arguments on Appeal.*

With these principles in mind, we consider Weir's challenge to the probable cause finding made by the magistrate. We are satisfied that the information furnished by Fees' application established the requisite nexus between the crime and its fruits. Douglas' report that Weir shot the victims and that drugs, guns, and cash taken from Easter's residence had been split between Simpson and Weir demonstrated the necessary probability that Weir would possess those fruits of the crime. Weir's two incriminating statements and possession of

two handguns while at Simpson's apartment in the two days following the crime further link him to its commission. Because a person's car, home and person are logical places to search for items in their possession or control, information that Simpson helped Weir move his possessions to Weir's parents' home in Bedford established that as a place likely to produce evidence of the crime.

Defendant's challenge to the warrant, however, focuses on the magistrate's failure to establish Douglas' reliability or the credibility of her information. This omission, argues defendant, violates Iowa Code section 808.3 (Supp.1985) thereby invalidating the probable cause finding and rendering the fruits of search obtained pursuant to such a warrant inadmissible under Iowa Rule of Criminal Procedure 11(1)(e).

Section 808.3 provides, in pertinent part, that if the grounds for issuance of a search warrant are supplied by an informant,

the magistrate shall identify only the peace officer to whom the information was given but shall include a determination that the information appears credible either because sworn testimony indicates that the informant has given reliable information on previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate.

In two recent cases, *State v. Sykes,* 412 N.W.2d at 581 and *State v. Swaim,* 412 N.W.2d 568, 571 (Iowa 1987) we considered similar challenges to the legality of warrants based on endorsements which ostensibly failed to include specific findings by the magistrate that the informant or the informant's information appeared to be credible. We concluded that by enacting section 808.3 the legislature sought to require more input from the magistrate, thereby aiding the reviewing court in its duty to ensure that a substantial basis for finding probable cause existed. We nevertheless upheld warrants which substantially complied with the statute's mandate, holding that the required determination

could be met by the magistrate's specific reference to or adoption of those portions of the affidavits and attachments which corroborated an informant's credibility. *See Sykes*, 412 N.W.2d at 582; *Swaim*, 412 N.W.2d at 574.

■ In the present case, Fees' affidavit and the magistrate's endorsement are devoid of any specific reference to Douglas' reliability or the credibility of the information she furnished. The State argues, however, that the "specified reasons" requirement of section 808.3 was intended by the legislature to apply only when the informant is not named in the application and accompanying affidavits. We agree with this interpretation, finding that it accounts for the inclusion of the statutory qualification that "when grounds for issuance are supplied by an informant, the magistrate shall identify *only* the peace officer...." Iowa Code § 808.3 (emphasis added). Moreover, such an interpretation is consistent with one of the primary purposes of the endorsement requirement: to give the defendant notice of the facts recited against him for purposes of attacking their veracity. *State v. Liesche*, 228 N.W.2d 44, 47–48 (Iowa 1975). We find it significant that defendant has made no attempt to attack the veracity of Douglas' information. Thus requiring the magistrate to make express findings on the credibility of Douglas or her information would not have aided the defendant.

■ Our inquiry does not end with the simple fact that the informant in the affidavit was named, however. To do so would overlook the other important function of the endorsement requirement: to provide accurate and meaningful judicial review of the probable cause showing. *Leische*, 228 N.W.2d at 47–48. Even though the magistrate need not make express findings of credibility when a search warrant affidavit relies on hearsay from a named informant, factors such as the veracity and basis of knowledge of such an informant are still relevant, if not controlling, when a reviewing court assesses "the totality of the circumstances." *See Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *Sykes*, 412 N.W.2d at 572.

The importance of the credibility factor is heightened when, as in the case before us, the record made at the suppression hearing reveals that informant Betsy Douglas demanded payment for her information. Courts have generally applied higher standards of proof when weighing the reliability of tipsters who act for money, leniency or some other selfish purpose than when considering the reliability of the citizen informer whose only motive is to help law officers in the suppression of crime. *State v. Drake*, 224 N.W.2d 476, 478 (Iowa 1974). As we explained in *Drake*,

In the former the information furnished is less likely to be truthful, and it is therefore subjected to much closer scrutiny as to the surrounding circumstances reflecting on its credibility. As part of this scrutiny, the informant's prior reliability must oridinarily be demonstrated.

In the latter the rule of prior reliability is considerably relaxed for several reasons. In the first place the citizen informer has rarely had any earlier experience in reporting suspected criminal activity. Furthermore, unlike the professional informant, he is without motive to exaggerate, falsify or distort the facts to serve his own ends.

Reliability must still be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause.

*Id.* See also *Illinois v. Gates*, 462 U.S. at 233–34, 103 S.Ct. at 2329–30, 76 L.Ed.2d at 545; *United States v. Spach*, 518 F.2d 866, 870 (7th Cir.1975).

■ Douglas does not fall neatly into either category. She demanded money for the information she offered in this case, but no evidence was tendered to show that she had previously served as a police infor-

mant. Thus, like a citizen informer, no history of reliability could be established. Two other factors known to Fees but not disclosed to the magistrate, however, point to the need for credibility indicia: Douglas had a history of drug use and was suffering from a serious illness on both occasions when she spoke to Fees. In view of these circumstances, her information would not merit the presumptive reliability of a citizen informant.

We must therefore look to other factors tending to support the district court's finding that "the record before the magistrate satisfactorily showed that Douglas ... [is a] credible person and [her] information was (is) reliable." Courts resolving the issue of informant credibility have relied on factors such as whether the informant was named, *see United States v. Spach,* 518 F.2d at 870; the specificity of facts detailed by the informant, *see United States v. Marihart,* 472 F.2d 809, 813 (8th Cir.1972); *State v. Easter,* 241 N.W.2d 885, 887 (Iowa 1976); whether the information furnished was against the informant's penal interest, *see United States v. Martin,* 615 F.2d 318, 325 (5th Cir.1980); *Spach,* 518 F.2d at 870; *State v. Post,* 286 N.W.2d 195, 200 (Iowa 1979); whether the information was corroborated, *see Martin,* 615 F.2d at 324–25; *Marihart,* 472 F.2d at 813; whether the information was not public knowledge, *see Spach,* 518 F.2d at 871; *Easter,* 241 N.W.2d at 887; whether the informant was trusted by the accused, *see Illinois v. Gates,* 462 U.S. at 245–46, 103 S.Ct. at 2335–36, 76 L.Ed.2d at 552–53; and whether the informant directly witnessed the crime or fruits of it in the possession of the accused, *see Post,* 286 N.W.2d at 200; *Drake,* 224 N.W.2d at 479.

■ Applying these criteria, we conclude that the warrant application and its attachments sufficiently demonstrated the credibility of Douglas and her information. First, she came forward and identified herself as a person close to one of the perpetrators of the crime. By doing so, she

directly implicated her paramour in a very grave offense, potentially risking his incarceration for the remainder of his life. Next, she related Simpson's description of the execution-style murders in a way that matched the scenario recreated through police investigation. She specifically detailed the types of weapons and contraband she personally observed in the possession of Simpson and Weir in the days immediately following the crime. Moreover, her observations were corroborated by Ronda Wagner, another person associated with the accused.[1] While it is true that the only information independently verified by police officers concerned such "public" knowledge as the make and location of Weir's car and his place of employment, the corroboration of these details, though not otherwise incriminating, served to strengthen Douglas' veracity and basis of knowledge.

■ Defendant's final attack on the magistrate's finding of probable cause merits only our brief attention. He asserts that Fees' failure to inform the magistrate that he knew Douglas had demanded money in exchange for her information constituted an omission equivalent to a material misstatement requiring us to invalidate the warrant. *See State v. Luter,* 346 N.W.2d 802, 808 (Iowa), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *State v. Groff,* 323 N.W.2d 204, 206–07 (Iowa 1982) (citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978)). Our review of the record discloses that defendant failed to present any evidence establishing that Fees' omission was knowing and intentional or done with a reckless disregard for the truth, He has therefore failed to carry his burden on the issue. *Id.*

### IV. *Summary.*

We conclude that the search warrant at issue withstands both statutory and constitutional scrutiny. Its validity was properly upheld by the district court. We therefore

---

1. Before the trial court, the defendant noted that Wagner's information was hearsay but did not object to its inclusion in the warrant application. We therefore agree with the State that defendant has not preserved error on the consideration of her information by the magistrate.

affirm the judgment and sentence entered upon the jury's verdict.

AFFIRMED.

All Justices concur except SNELL, J., who takes no part.