**STATE of Iowa, Appellee,**

v.

**Martin Chris GODBERSEN, Appellant.**

No. 91–1084.

Supreme Court of Iowa.

Dec. 23, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Douglas R. Marek, Asst. Atty. Gen., Thomas S. Mullen, County Atty., and Mark A. Campbell, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

Defendant appeals from his conviction for possession of marijuana with the intent to deliver and tax evasion. He contends the district court erred in refusing to suppress evidence seized pursuant to a search warrant, which was allegedly issued without probable cause, and refusing to dismiss the tax evasion count on the ground that Iowa Code chapter 421A (1991) violated his rights to due process and protection from self-incrimination.

I. *Background.*

On February 14, 1991, a Sioux City police officer arrested Mark Bonham for driving with a suspended license. During a search of Bonham's vehicle, the officer discovered twelve baggies containing marijuana, a $200 money order, and over $500 in cash. Bonham told officers he lived at 2204 Summit Street in Sioux City.

Police discovered that both Bonham and his landlord, Martin Chris Godbersen, had prior drug convictions. They checked police records and determined that two phone calls regarding alleged drug dealing at 2204 Summit Street had been recently received on the police "rap" line. Based on this information, a search warrant was issued for the residence located at 2204 Summit Street.

Later that day, the officers executed the search warrant. The search uncovered four pounds of marijuana separated into three one-pound bags and thirteen smaller bags. There were no tax stamps affixed to the marijuana. Also discovered was a triple beamed scale and other drug-related paraphernalia. Godbersen was in the residence when the search was made. He was arrested and advised of his rights. The police also seized $583 that was in his possession.

The State filed a trial information charging Godbersen with one count of possession of marijuana with intent to deliver in violation of Iowa Code section 204.401 and one count of tax evasion for failing to pay the excise tax on more than forty-two-and-one-half grams of marijuana in violation of Iowa Code section 421A.12. Prior to trial, Godbersen filed a motion to suppress items seized in the search of his residence and a motion to dismiss the excise tax charge. The court denied both motions.

Godbersen waived jury trial. Following a bench trial, the district court found Godbersen guilty on both counts. Godbersen appeals from the final judgment entered upon the court's verdicts.

## II. *Search Warrant.*

Godbersen alleges the district court erred in failing to grant his motion to suppress evidence obtained during the search of his residence. He argues the information acquired by the police from the "rap" line was not sufficiently reliable to provide probable cause for issuing the warrant. The "rap" line is a system set up so that citizens can call the police and report any type of criminal activity without disclosing the caller's name. Godbersen contends the requisite showing of probable cause was not made. Specifically, he contends there was an insufficient nexus between the criminal activity described in the application for the search warrant and his residence. Godbersen also alleges the "rap" line information could not be considered because the magistrate did not specify reasons why the informant or the information

provided by the informant appears credible as required by Iowa Code section 808.3.

We find it unnecessary to address Godbersen's section 808.3 claim that the "rap" line tips were not sufficiently credible and reliable to meet the statutory requirements. *See State v. Iowa Dist. Court,* 472 N.W.2d 621, 623–24 (Iowa 1991). The tips, while considered by the magistrate in issuing the search warrant, are not needed to establish probable cause. Therefore, we now consider Godbersen's challenge to the nexus between the criminal activity described in the search warrant application and his 2204 Summit Street residence. Since he alleges his constitutional rights were violated, our review is de novo. *State v. Swaim,* 412 N.W.2d 568, 570 (Iowa 1987).

We are guided in our examination by the holding of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which stated:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. As previously noted, the search and seizure provisions of the United States and Iowa Constitutions contain identical language. *State v. Bishop,* 387 N.W.2d 554, 557 (Iowa 1986). Consequently, they are generally deemed to be identical in scope. *Id.* We adopted the *Gates* standard in *State v. Luter,* 346 N.W.2d 802, *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). *See State v. Niehaus,* 452 N.W.2d 184, 189 (Iowa 1990); *Swaim,* 412 N.W.2d at 571. We also recognize our duty to give deference to the magistrate's finding. *State v. Weir,* 414 N.W.2d 327, 330 (Iowa 1987). Further, due to the pref-

erence for warrants, any doubts are accordingly resolved in favor of their validity. *Id.*

 We have consistently applied the following test for determining the existence of probable cause:

whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there. Probable cause to search requires a probability determination as to the nexus between criminal activity, the things to be seized and the place to be searched.

*Id.* (citations omitted). In determining whether probable cause exists, our review is limited to consideration of only that information, reduced to writing, which was actually presented to the magistrate at the time the application for warrant was made. *State v. Mehner,* 480 N.W.2d 872, 875 (Iowa 1992). With these principles in mind, we consider Godbersen's challenge to the probable cause finding made by the magistrate.

██ Our examination of the information actually presented to the magistrate reveals the following:

Mark Bonham was arrested on February 14, 1991, after 3.9 ounces of marijuana was found in his possession. He was charged with possession of marijuana with intent to deliver. The packages of marijuana found in his possession were evenly weighed and packaged. No packaging material or weighing and measuring devices were found in the car he was operating at the time of his arrest. An experienced officer of the Sioux City police department's major offender team concluded the lack of packaging and scales led him to believe that weighing and packaging of the marijuana took place at a location separate from Bonham's car where scales and packaging materials would be located. Bonham had lived at 2204 Summit Street for six or seven months. He paid rent to Godbersen who also resided at 2204 Summit Street. Both Godbersen and Bonham had extensive criminal records. Bonham had been convicted of felony charges and

had been charged with controlled substance offenses. He was arrested on February 14, 1991, for possession of marijuana with the intent to deliver. Godbersen had two drug convictions and had been sentenced to prison. His last drug arrest for OWI and possession of marijuana was on December 31, 1989.

This information is sufficient to lead a person of reasonable prudence to believe evidence of a crime could be located at 2204 Summit Street. It is reasonable to assume that persons involved with drug trafficking would keep evidence—drugs, weighing and measuring devices, packaging materials and profits—at their residences. *United States v. McNeese,* 901 F.2d 585, 596 (7th Cir.1990) ("Realizing that it is likely that narcotics distributors would keep the drugs, implements of distribution, records, and proceeds in their residences, we find it reasonable to assume that a search of those premises would contain certain evidence. The affidavit need not contain personal observations that such evidence was kept at the residences."); *United States v. Reyes,* 798 F.2d 380, 382 (10th Cir.1986) ("Reyes complains that the information in the affidavit contained no specific link to his residence.... It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence."); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ("Agent Garcia had stated in the affidavit that his ten year experience as a DEA agent had taught him that major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities.").

In *State v. Groff,* 323 N.W.2d 204 (Iowa 1982), we addressed the sufficiency of an affidavit to show probable cause to search the defendants' residence. The affiant was an experienced narcotics investigator. It was his experience that individuals who manufacture or distribute marijuana need an area to refine and store marijuana prior to use and distribution. We concluded:

that the magistrate could reasonably infer from the facts recited in the affidavit that defendants' residence was likely to be the location of marijuana for personal use, marijuana in various stages of processing before distribution, and records and equipment used in production. *Id.* at 212. Direct observation is not required. *Id.* An officer's expert opinion is an important factor to be considered by the judge reviewing a warrant application. *See Fama,* 758 F.2d at 838, and cases cited therein.

Under the totality of the circumstances, we find the magistrate had a substantial basis for concluding probable cause existed to support the issuance of the warrant for 2204 Summit Street in Sioux City. We hold the search warrant was issued upon probable cause. The court did not err in denying Godbersen's motion to suppress.

### III. *Drug Tax Stamp.*

Godbersen claims Iowa Code chapter 421A, imposing an excise tax on unlawful dealing in controlled and other substances, requires him to incriminate himself in violation of the Fifth Amendment of the United States Constitution and article I, section 9 of the Iowa Constitution. Specifically, he contends the physical act of purchasing the drug tax stamps in accordance with Iowa Code section 421A.3 constitutes a compelled disclosure of criminal information because the law applies only to individuals unlawfully in possession of controlled substances.

Statutes carry a presumption of constitutionality. *State v. Duncan,* 414 N.W.2d 91, 95 (Iowa 1987). The person attacking the constitutionality of a statute carries the heavy burden of rebutting the presumption. *State v. Sullivan,* 298 N.W.2d 267, 270 (Iowa 1986).

The Fifth Amendment provides that no person shall be compelled in a criminal case to be a witness against oneself. U.S. Const. amend. V; *see* Iowa Const., art. I, § 9. The Supreme Court has considered the impact of tax laws on Fifth Amendment guarantees against self-incrimination.

*Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (federal marijuana tax act); *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (wagering tax system); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (same). The Court reaffirmed the long-standing rule that the Congress can tax an unlawful activity. *Marchetti,* 390 U.S. at 44, 88 S.Ct. at 700, 19 L.Ed.2d at 895. In *Marchetti,* the Court identified a three-part test for determining the constitutionality of a tax statute assailed on Fifth Amendment grounds: (1) whether the tax is aimed at individuals "inherently suspect of criminal activities," and whether the tax activity is in "an area permeated with criminal statutes"; (2) whether an individual is "required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities"; (3) whether such information "would surely prove a significant 'link in a chain' of evidence tending to establish his guilt." *Id.* at 47–48, 88 S.Ct. at 702–03, 19 L.Ed.2d at 897–98. The Court noted "[t]he central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Id.* at 53, 88 S.Ct. at 705, 19 L.Ed.2d at 901.

Various states have considered the constitutionality of their unlawful drug taxation schemes to determine if a violation of the Fifth Amendment has occurred. *Harris v. State,* 563 So.2d 97 (Fla.Dist.App. 1990); *State v. Smith,* 120 Idaho 77, 813 P.2d 888 (1991); *State v. Durant,* 244 Kan. 522, 769 P.2d 1174 (1989); *Sisson v. Triplett,* 428 N.W.2d 565 (Minn.1988); *State v. Roberts,* 384 N.W.2d 688 (S.D.1986); *State v. Davis,* 787 P.2d 517 (Utah App.1990). The Florida, Idaho, Kansas, Minnesota, and Utah statutes are similar to Iowa's and have passed constitutional muster in the face of self-incrimination challenges. The South Dakota statute was found to be in violation of the self-incrimination clause because its clear import was to incriminate drug dealers. *Roberts,* 384 N.W.2d at 691.

In *Sisson*, the Minnesota Supreme Court upheld the constitutionality of the Minnesota Marijuana and Controlled Substance Taxation Act, chapter 297D (1986), in the face of a Fifth Amendment challenge. The court focused its attention on the confidentiality provision in section 297D.13 and revenue department regulations that protect a dealer's anonymity. At the time of trial, the confidentiality provision did not impose a criminal penalty for disclosing information obtained from dealers purchasing the stamp tax. A Minnesota revenue department regulation did relieve a dealer from submitting any information when purchasing a stamp. The Minnesota legislature in 1987 amended the confidentiality provision to establish a criminal penalty and incorporated the Minnesota revenue department regulation into the statute.

Iowa's statute also assures anonymity to dealers purchasing drug tax stamps. Section 421A.10 explicitly prohibits any information obtained from a dealer, pursuant to compliance with chapter 421A, from being released or used against the dealer in any criminal proceeding except in connection with a proceeding involving taxes due under chapter 421A. Iowa Code § 421A.10. The criminal penalty for disclosure is a misdemeanor. *Id.* Further, Iowa's department of revenue and finance administrative rules governing the administration of marijuana and controlled substances stamp tax provide additional guarantees of confidentiality. 701 Iowa Admin.Code 91.2 (421A). "Persons (including dealers) purchasing stamps are not required to provide identification such as their name or address when purchasing stamps." *Id.* The administrative rules also prohibit the disclosure and use of any information obtained from a stamp purchaser in the course of purchasing stamps. *Id.* These administrative rules were adopted prior to Godbersen's arrest. The rules were adopted under authority prescribed by statute. Iowa Code § 421A.2. Thus, chapter 421A does not contain the constitutional pitfalls that were evident in the federal marijuana tax act or the early wagering tax statutes.

In the *Marchetti* line of cases, the United States Supreme Court found a "significant element of Congress' purposes in adopting" those statutes was to furnish information to prosecutors. *Leary*, 395 U.S. at 26, 89 S.Ct. at 1543, 23 L.Ed.2d at 76. Such a purpose is not evident in Iowa Code chapter 421A. This chapter does not violate rights against self-incrimination. We find no error in the court denying the defendant's motion to dismiss. The judgment of the district court is affirmed.

AFFIRMED.