# IN THE COURT OF APPEALS OF IOWA

No. 15-1117
Filed July 27, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellant,

**vs.**

**PERRYELLIS R. STEPHENS,**
　　　　Defendant-Appellee.
_____

　　　　Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.


　　　　The State seeks discretionary review of the district court's grant of the defendant's motion to suppress. **REVERSED AND REMANDED.**


　　　　Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellant.

　　　　Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellee.


　　　　Considered by Danilson, C.J., and Vogel and Potterfield, JJ. Tabor, J., takes no part.

**VOGEL, Judge.**

The State seeks discretionary review of a suppression ruling that found two executed search warrants were not supported by probable cause. Because we find probable cause existed as to both warrants, we reverse.

**I. Background Facts and Proceedings.**

On February 14, 2015, a Scott County magistrate issued a search warrant for the residence and vehicles of Perryellis Stephens, located in Bettendorf, Iowa.

The search warrant application contained information from an anonymous informant, whose tips began in November 2014 and continued periodically until February 2015. The informant stated that Stephens and an associate, Ahmad Jeffries, had engaged in renting vehicles to drive to Chicago for the purpose of purchasing dealer quantities of crack cocaine with the intent to return to the Quad Cities area to distribute. Specifically, the informant told officers that Jeffries had made such a trip to Chicago on February 10, 2015. Further, the informant provided information that Stephens resided at a specified address on Grant Street in Bettendorf with his girlfriend, Tonae McFulson, and Jeffries and his girlfriend, Shamia McFulson, lived nearby.

Following the February 10, 2015 tip, law enforcement began surveillance on Stephens, Tonae, Jeffries, and Shamia. Record checks indicated that Stephens and Tonae resided at the address given by the informant. Three vehicles were registered to that address: a 2003 Cadillac Deville registered to Stephens and two vehicles registered to Tonae. A records check also indicated that Shamia resided at the address given by the informant on State Street in Bettendorf and had one vehicle registered to that address. Jeffries's registered

address was in Chicago. Records checks were also completed on three vehicles, all rentals, one belonging to EAN Holding and the remaining two to Hertz Rental (a 2014 red Nissan sedan and a 2014 Chrysler van).

On February 12, 2015, police officers watched Shamia leave her residence and drive to a Family Dollar store in Rock Island, Illinois, using her cell phone en route. While sitting in her car in the parking lot of the store, officers observed a vehicle with three female occupants pulling up alongside Shamia's car. When two of the females entered the store, the other female enter Shamia's car for approximately thirty seconds before exiting. Shamia then drove back to Iowa.

Later that same day, officers watched Tonae leave her Grant Street residence in the Nissan rental vehicle and drive to Shamia's residence on State Street. She remained there for approximately one hour and fifteen minutes, and then she returned to the Grant Street residence. About fifteen minutes after Tonae arrived back at the Grant Street residence, police saw her enter the Chrysler rental van for a brief moment before returning to the Nissan rental car.

Officers then witnessed Tonae driving the Nissan to a Kwik Shop in Davenport, where she appeared to be looking for someone while speaking on her cell phone. A vehicle then approached the Nissan, and a passenger of that vehicle entered the backseat of the Nissan, staying there for approximately thirty seconds. After the passenger got out of the Nissan, both vehicles left the parking lot.

On that same day, officers watched Jeffries parking the Nissan at the State Street residence and entering the residence. He then exited the residence

and drove the Nissan from the south of the parking lot to the north end next to a dumpster. Jeffries was then seen exiting the vehicle, lifting up the left side of the dumpster, and throwing a small item into it before driving away. Officers immediately approached the dumpster and opened the left side lid. Inside, officers noticed the dumpster was approximately half full with residential-style trash bags, covered with a light frost. However, officers located a blue latex glove atop other trash items and on the left side of the dumpster. The glove contained another glove, which was filled with eight sandwich baggies with corners cut off. Residue found inside the baggies field tested positive for cocaine.

At 8:55 p.m., Jeffries drove to another residence in Bettendorf, where he parked on the street. A male came out of the garage of the residence and met with Jeffries at the vehicle's passenger window. After a few seconds, the male returned to the garage. Jeffries then drove around Davenport, making a few brief stops and using his phone between stops.

On February 13, 2015, officers observed Stephens leaving the Grant Street residence in the Cadillac vehicle and driving to a Wal-Mart in Davenport. The driver of the work truck entered the Cadillac's front passenger seat and was hunched over for a couple of minutes, appearing to the officers as if he were inspecting something. After he exited the Cadillac, Stephens left the parking lot.

Later that same day, officers watched as Stephens drove the Cadillac to a building in Davenport where he parked, entered the building, and remained for approximately five minutes. Stephens then drove to another location, where a male approached the driver's side window for less than one minute. Officers

then watched as Stephens drove to another location in Davenport, where he parked on the street and entered a residence for approximately five minutes. He was then seen driving to a lot in Bettendorf where the Nissan was parked. He remained there for ten minutes. Shortly thereafter, Jeffries was observed entering the Nissan.

Officers conducted criminal background investigations on the four individuals. Stephens had a conviction for delivery of cocaine in 2012, Jeffries had prior drug-related arrests, and Shamia and Tonae had prior criminal convictions as well.

Based on this information, the police applied for a search warrant, and the magistrate issued the warrant on February 14, 2015, for, among other places, Stephens's Grant Street residence and vehicles. Various contraband, including marijuana, digital scales, five cell phones, and $7700 cash was seized. Additionally, following the search of Stephens's house and vehicle, officers located and seized keys to "Storage Mart Unit #608" in the Cadillac's cup holder and a receipt for a "Storage Mart Unit #314" in a dresser drawer in an upstairs bedroom of the residence.

After Stephens denied knowledge or ownership of a storage unit, officers contacted the storage unit company and confirmed with an employee that Stephens was no longer renting Unit #608 but was currently renting Unit #314. A second search warrant was issued for the storage unit. Additional contraband, including a loaded revolver, was seized during the execution of the second warrant.

Stephens was indicted on three criminal charges on March 16, 2015, and moved to suppress evidence seized under the warrants alleging that both lacked probable cause. The State resisted, but on June 2, 2015, the district court granted the motion and suppressed all the evidence seized from Stephens's residence, vehicle, and storage unit. The supreme court granted the State's application for discretionary review, and then transferred the case to this court.

## II. Scope and Standard of Review.

Our review of a district court's ruling regarding probable cause for the issuance of a search warrant is de novo. *State v. Myers*, 570 N.W.2d 70, 72 (Iowa 1997). Under our de novo review, we must determine whether the district court properly decided if the magistrate had a substantial basis for concluding that probable cause existed. *See State v. Green*, 540 N.W.2d 649, 655 (Iowa 1995) (recognizing the task of the appellate court is "not to make an independent determination of probable cause, but only to determine whether the issuing magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed'" (alteration in original) (citations omitted)). A determination regarding whether probable cause exists is limited in scope to "only that information, reduced to writing, which was actually presented to the magistrate at the time the application for warrant was made." *State v. Godbersen*, 493 N.W.2d 852, 855 (Iowa 1992). Deference is given to the district court's decision, but we are not bound by it. *State v. Turner*, 630 N.W.2d 601, 605 (Iowa 2001).

## III. Analysis.

A search warrant must be supported by probable cause, which exists "when the facts and circumstances presented to the judicial officer are sufficient

in themselves to justify the belief of a reasonably cautious person that an offense has been or is being committed." *State v. Groff*, 323 N.W.2d 204, 212 (Iowa 1982). The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis for knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 46 U.S. 213, 238 (1983). All reasonable inferences are drawn in support of the finding of probable cause. *State v. Gogg*, 561 N.W.2d 360, 364 (Iowa 1997). However, a "mere suspicion, rumor, or even 'strong reason to suspect' a person's involvement with criminal activity is inadequate to establish probable cause." *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987) (citations omitted). In close cases, doubts are resolved "in favor of upholding the validity of the warrant." *Gogg*, 561 N.W.2d at 364.

In determining whether probable cause exists, there must be "a probability determination as to the nexus between criminal activity, the things to be seized and the place to be searched." *Weir*, 414 N.W.2d at 330 (citing *State v. Seager, 341 N.W.2d 420, 427 (Iowa 1983)). We do so by using "the totality of the circumstances standard." *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). The United States Supreme Court has held that "a significantly corroborated anonymous tip is sufficient for purposes of the Fourth Amendment." *State v. McNeal*, 867 N.W.2d 91, 101 (2015) (quoting *Alabama v. White*, 496 U.S. 325, 331 (1990)).

In the present case, officers initially received information about Stephens and Jeffries from the confidential informant in November 2014. Thereafter, the

informant frequently updated officers with information concerning Stephens and Jeffries and provided to officers information that Jeffries made a trip to Chicago in a rental car on February 10 for the purpose of purchasing drugs to sell upon return to the Quad Cities area. The informant provided specific information about Stephens including his precise home address and the fact that he resided with his girlfriend Tonae. The informant also provided similar information about Jeffries.

Officers also conducted record checks on all four individuals and the vehicles seen at their respective residences. The record checks confirmed, among other things, Stephens's and Tonae's home address, corroborating the information provided by the confidential informant, as well as confirming that some of the vehicles at the residences were rental vehicles. Officers then conducted a two-day surveillance on Stephens, Jeffries, and the two girlfriends. During this investigation, officers observed all four individuals separately driving around the Quad Cities area in both the rental cars and their own personal vehicles, making brief stops at various locations to meet with other individuals.

### A. First Search Warrant.

In the first search warrant application, the officer attached an affidavit detailing his qualifications, training, education, and experience in the areas of drug trafficking crime investigation. The affiant officer indicated that, among other things, he was familiar with drug-dealing activity, including the patterns of behavior drug dealers commonly employ, such as driving from location to location while using their cell phones and then meeting with buyers for short periods of time. The affiant officer further provided in his affidavit that the

activities and conduct he and other trained officers observed of Stephens, Jeffries, and the two girlfriends fell within the types of activities and conduct consistent with drug trafficking. Thus, because of the officer's qualifications, training, education, and experience, the issuing magistrate properly relied on the officer's opinion in finding that probable cause existed. Furthermore, the search warrant application also included the fact that Stephens had a drug conviction from 2012. Our supreme court has held that an issuing magistrate may "consider a suspect's history of involvement in the drug trade." *State v. Padavich*, 536 N.W.2d 743, 748 (Iowa 1995).

We do not view each piece of information in isolation; rather, we look at the totality of the circumstances as contained in the warrant applications. *See Davis*, 679 N.W.2d at 656 ("We use the totality of the circumstances standard . . . to determine whether probable cause has been established for the issuance of a search warrant."). The information provided by the informant was sufficiently corroborated as law enforcement conducted records checks, criminal background checks, as well as personal observations of the pattern of activities over the course of two days of Stephens as well as his associates. Moreover, because the observations indicated apparent drug-dealing behaviors, it was logical for officers to search Stephens's home and vehicles. *See Godbersen*, 493 N.W.2d at 855 ("It is reasonable to assume that persons involved with drug trafficking would keep evidence—drugs, weighing and measuring devices, packaging materials, and profits—at their residences."). Thus, we find that first search warrant was valid. The district court's order suppressing the evidence seized under that warrant is reversed.

**B. Second Search Warrant.**

As to the second warrant, Stephens avers that because the basis for the second warrant resulted from the execution of the first search warrant which he asserted was invalid, the second warrant's seizures must be suppressed as "fruit of the poisonous tree." Again, we disagree.

The receipt and keys to the storage unit were discovered in Stephens's personal vehicle and bedroom dresser. Stephens denied knowledge or ownership of the storage unit, but the officers confirmed with an employee of the storage company that Stephens was renting unit #314. Having already observed Stephens's pattern of movements around town and having seized controlled substances and drug-selling paraphernalia in his home and car, officers had probable cause to believe that the storage unit then would also contain contraband. The issuing magistrate agreed, as do we. *See United States v. Martinez*, 268 F. App'x 593, 593 (9th Cir. 2009) (finding magistrate had substantial basis for finding probable cause and a nexus to validate the warrant to search a storage unit where defendant had two controlled buys and a search of his home and person uncovered narcotics as well as a receipt for a storage unit in his name); *United States v. Appleby*, 975 F.2d 1384, 1386 (8th Cir. 1992) (finding probable cause existed to support search warrant for storage unit where defendant had been under investigation for illegal drug activity and had been arrested, a search of his motel room revealed a receipt for the storage unit, and the storage facility confirmed the defendant rented a unit). *But see State v. Perez*, 32 N.E.3d 1010, 1018 (Ohio Ct. App. 2015) (finding a lack of a nexus to support issuance of search warrant for storage unit due to a lack of evidentiary

support linking the storage unit to the defendant's drug activities).  Therefore, we find the search warrant issued for the storage unit was properly supported by probable cause and the evidence seized should not have been suppressed.

**IV. Conclusion**.

We reverse the district court's granting of Stephens's motion to suppress because we find that both search warrants were supported by probable cause. As such, the evidence seized during both search warrants' executions should not have been suppressed.  We remand for further proceedings.

**REVERSED AND REMANDED.**

Danilson, C.J., concurs; Potterfield, J., concurs in part and dissents in part.

**POTTERFIELD, Judge** (concurring in part and dissenting in part)

I agree with the majority that the magistrate was provided sufficient information in the application for the first search warrant, the application involving the residence, given the assumption articulated in *State v. Godbersen*, 493 N.W.2d 852, 855 (Iowa 1992), which states, "It is reasonable to assume that persons involved with drug trafficking would keep evidence—drugs, weighing and measuring devices, packaging materials, and profits—at their residences." However, I disagree that the second application for a warrant, this time to search the storage unit, supported a probable cause finding. Unlike a residence, a rented storage unit does not, standing alone, provide a sufficient nexus to support a presumption evidence will be located there. As the district court noted in its ruling, the magistrate here was not given any information that any of the individuals went to the storage unit during the period they were surveilled, the anonymous tip did not include the storage unit, and there was no evidence of illegal activity involving the unit. I would affirm the district court's ruling as to the second search warrant.