# IN THE COURT OF APPEALS OF IOWA

No. 18-1863
Filed April 1, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KOLE ALEXANDER HIGGINS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Greene County, Joseph B. McCarville, District Associate Judge.

A defendant appeals five drug-related convictions. **REVERSED AND REMANDED.**

James S. Nelsen, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge**.

Kole Higgins challenges his five drug-related convictions. He claims the district court should have suppressed evidence found at his home during the execution of a search warrant. Although we decide marginal cases in favor of upholding warrants, we cannot rubber stamp the authorization to search a home unsupported by probable cause. Here, the search warrant application established Higgins's association with people who used or delivered controlled substances. But the application offered no observations, direct or indirect, showing Higgins kept drugs in his home. Without that nexus, the issuing magistrate did not have a substantial basis to find probable cause for the warrant. We thus reverse the suppression ruling and remand for further proceedings consistent with this opinion.

## I.     Facts and Prior Proceedings

In April 2018, Greene County Sheriff Jack Williams applied for a warrant to search Higgins's residence in Scranton for evidence of "illegal narcotics." In his affidavit, Sheriff Williams set the stage by discussing a joint investigation with the Iowa Division of Narcotics Enforcement that led to the arrest of Travis Straight. During that investigation, officers saw Higgins "coming and going" from Straight's property several times. A warranted search of Straight's residence uncovered "controlled substances and a large amount of cash."

After Straight's arrest, the investigation diverged toward Higgins. Straight called "the phone number of Steven Kanealy" from jail. According to the sheriff's affidavit, Straight asked "the person who answered the phone to go to Kole's residence and get cash to bond him out." The sheriff asserted: "This shows Kole

Higgins has large sums of cash about which Travis and Kole are both aware."[1] Indeed, Straight bonded out later that day "for 2,500 dollars." But the sheriff did not confirm who posted bond or if the cash came from Higgins's house.

After Straight's jail call, Sheriff Williams instructed his deputies to surveil Higgins's house and record all license plate numbers of vehicles making short stops. The deputies conducted surveillance over four days—April 9 until April 12. According to the affidavit, the deputies noted six cars and two guests on foot stopped at Higgins's residence during those four days—one visitor on April 9, two on April 10, one on April 11, and four on April 12.[2] The deputies recorded the license plate numbers to determine the registered owners of those six cars and the sheriff ran background checks for those owners. Four of the six registered owners had drug possession or drug paraphernalia convictions.[3] In the warrant application, the sheriff also included Higgins's conviction for possession of a controlled substance from October 2017.

Although the magistrate rejected the evidence, the sheriff noted receiving "anonymous information from concerned citizens" who claimed to have seen cocaine, methamphetamine, and "a large amount of marijuana" in Higgins's house.

---

[1] Later in the affidavit, the sheriff mentioned that from jail Straight also made statements to Kanealy "about getting rid of cash that we did not find during the search warrant at his residence."

[2] The sheriff's affidavit did not reveal the time of the day for the visits.

[3] In his affidavit, the sheriff mistakenly conveyed that the deputies positively identified five of the visitors. The State clarified at the suppressing hearing that the deputies only identified two visitors. The sheriff obtained criminal histories for the registered owners of four vehicles, but had no information if those owners actually visited Higgins's residence. Also at the suppression hearing, the defense noted the visitor on April 10, who had a 2011 drug conviction, was the stepfather of Higgins's live-in fiancée.

Sheriff Williams acknowledged he had "no way to verify" those reports because the callers did not leave their names.

In addition, Sheriff Williams shared information from Straight's probation officer revealing Straight's admissions to packaging and distributing cocaine and Straight's positive test for using cocaine. Sheriff Williams concluded: "Given the known connection between Travis (Straight) and Kole (Higgins), the reports about cocaine in Kole's house, and the cocaine in Travis's system, it is likely that Travis was packing cocaine at Kole's house." The sheriff also discussed his experience investigating the narcotics trade and expressed his opinion Higgins was "part of a large scale drug trafficking network" that involved Straight and Kanealy.

In the abstract of testimony, the magistrate made these hand-written notations:

> Sheriff Williams indicated house is unkept, low value house. Yet, defendant had $2,500 cash readily available and no job. Invitees/guests at property to be searched are typically there for 5 mins or less as well.

> Undersigned does not take into account the anonymous tips where no informant info is given to LEC.

Based on the sheriff's affidavit, the magistrate granted a search warrant for Higgins's residence. During the search, the sheriff found two men outside Higgins's garage and six people inside the garage. The search also unearthed two pounds of marijuana, a scale, glass smoking devices, a methamphetamine pipe, and pill bottles of Lorazepam and Cyclobenzaprine.

The State charged Higgins with seven counts:

Count I: Possession with intent to deliver marijuana, a class D felony, in violation of Iowa Code section 124.401(1)(d) (2018);

Count II: Failure to affix a drug tax stamp, a class D felony, in violation of sections 453B.1, 453B.3 and 453B.12;

Count III: Sponsoring a gathering for use of controlled substances, a class D felony, in violation of section 124.407;

Count IV: Unlawfully keeping a place for purposes of using, possessing, selling, or keeping controlled substances, in violation of section 124.402(1)(e);[4]

Count V: Possession of methamphetamine, in violation of section 124.401;[5]

Count VI: Possession of a Lorazepam, second offense in violation of section 124.401(5);

Count VII: Possession of prescription drug without a prescription, Cyclobenzaprine, in violation of section 155A.21.

Higgins moved to suppress the evidence collected at his house. Higgins argued the warrant application contained misleading information. For example, the individuals with criminal histories listed in the application were the vehicle owners and not confirmed as the people visiting Higgins. Higgins also complained the sheriff did not confirm the money used to bail out Straight came from his residence. Plus, Higgins argued the record did not show he was provided *Miranda* warnings before his custodial interrogation.

At the close of the suppression hearing, the district court expressed its reservations about finding probable cause:

I'm not making a decision at this time, except to say the following: I'm not going to consider the anonymous information from concerned citizens. We don't know how old it is. There's no confidential informant. . . . I think the magistrate was correct in not using that and I'm going to agree with that and not use that information. . . . I do think it's a close call and here's why: . . . I understand the State's argument. A lot of traffic being there, short term, with a lot of suspicious people is suspicious. I agree with that. But, geez, would it kill them to stop somebody for a traffic, you know, offense and find drugs and/or couldn't they have done a garbage pick up to find some drugs in it. Again, I don't—there is no proof and I understand only has to be probable cause . . . and I'm not saying I'm going to rule on

---

[4] The jury found the defendant not guilty Count IV.
[5] The court granted the State's motion to dismiss Count V before trial.

behalf of the defense. I just don't know. But these things do strike me that there is a lot of suspicions but there is nothing concrete . . . .

The district court ultimately denied Higgins's motion to suppress. Higgins stood trial and the jury found him guilty on five counts. He now appeals.

## II. Scope and Standards of Review

We review challenges to suppression rulings de novo when they implicate constitutional issues. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019). That review normally entails an independent review of the totality of circumstances on the entire record. *Id.* But we do not make our own determination of probable cause. *See State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997). Instead, we decide whether the magistrate who issued the warrant had a substantial basis for concluding probable cause existed. *Id.*

In reaching that decision, we limit our consideration to "that information, reduced to writing, which was actually presented to the magistrate at the time the application for warrant was made." *State v. Godbersen*, 493 N.W.2d 852, 855 (Iowa 1992).

## III. Analysis

Higgins challenges the district court's denial of his motion to suppress.[6] In particular Higgins alleges the sheriff's application did not include enough facts to support the magistrate's probable cause finding. In his words: "[T]here is no

---

[6] Higgins also contends his trial counsel was ineffective in two ways: (1) by failing to ask for a hearing to challenge the veracity of the warrant application under *Franks v. Delaware*, 438 U.S. 154 (1978), and (2) by failing to present evidence police violated his rights under *Miranda v. Arizona*, 384 U.S. 436, 460 (1966). We need not reach these claims because his challenge to the search warrant is dispositive.

evidence of any drug possession, large or small, drug use, or observation of drugs which was determined to be reliable in the search warrant application." The district court acknowledged the evidence in support of the search warrant was "not overwhelming." But the court deferred to the magistrate's probable cause determination, noting "doubtful cases are resolved in favor of the validity of the search warrant."[7]

Our review of the magistrate's determination starts with the constitutional principles at stake. Both Article I, section 8 of the Iowa Constitution and the Fourth Amendment of the United States Constitution protect people from unreasonable searches and seizures and require a search warrant to be supported by probable cause.[8] U.S. Const. amend. IV; Iowa Const. art. I, § 8; *Baker*, 925 N.W.2d at 610. Physical entry of the home is the "chief evil" the wording of those provisions protects against. *Payton v. New York*, 445 U.S. 573, 585 (1980).

The test for probable cause is "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987). Probable cause to search requires a probability determination of the nexus between criminal activity, the things to be seized, and the place to be searched. *State v. Seager*, 341 N.W.2d 420, 427 (Iowa 1983). We interpret warrant

---

[7] The district court found an error in Higgins's zip code on the warrant application was unimportant in its probable cause determination. The court found the application sufficiently described the location to be searched. *See State v. Randle*, 555 N.W.2d 666, 669 (Iowa 1996).

[8] Because Higgins does not advance a distinct analytical framework under the Iowa Constitution, we choose to apply the federal framework and consider his state and federal claims concurrently. *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019).

applications "in a common sense, rather than a hypertechnical, manner." *State v. Shanahan*, 712 N.W.2d 121, 132 (Iowa 2006). And as a reviewing court we owe "great deference" to the magistrate's finding of probable cause. The magistrate must have a "substantial basis" when considering the totality of circumstances for concluding the search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

But reviewing for a substantial basis does not mean we act as a "rubber stamp" for the magistrate's approval of a warrant. *See* W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) (5th ed.). "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 915 (1984) (citation omitted). A substantial basis requires more than speculation by law enforcement that a person who associates with other drug users or dealers is probably dealing drugs himself. *See State v. Reniff*, 768 N.E.2d 667, 672 (Ohio Ct. App. 2001) (finding no substantial basis for probable cause finding when search warrant application made only "guilt-by-association" allegations).

To convince the magistrate that evidence of a crime could be located at Higgins's residence, the sheriff presented seven strands of information: (1) deputies saw Higgins at Straight's house when conducting surveillance in early spring of 2018 before executing a search warrant there in April; (2) after his arrest, Straight called Kanealy from jail, telling him to retrieve bond money from Higgins's home; (3) deputies compiled a list of six vehicle owners and two pedestrians who stopped at Higgins's home for short stints during four days of surveillance;

(4) Higgins had a conviction for possession of a controlled substance in October 2017; (5) the sheriff received "anonymous information from concerned citizens" who had been inside Higgins's residence and seen cocaine, methamphetamine, and a large amount of marijuana; and (6) according to his probation officer, Straight tested positive for cocaine and admitted aiding in cocaine distribution. The seventh consideration appeared in the abstract of testimony. There, the magistrate accepted the sheriff's implication that Higgins was involved in the drug trade because he lived in an "unkept" and "low value" house and had no job yet had $2500 in cash "readily available."[9]

Among these seven strands, the only information tying illegal drugs to Higgins's home were the anonymous tips that the magistrate declined to consider because the sheriff offered no assurance of their reliability. Without that strand, the substantial basis for probable cause unravels. The remaining information, considered in its totality, does not allow the magistrate to make a probability determination as to the nexus between the contraband to be seized and the place to be searched.

No doubt the information that Higgins associated with Straight and Straight directed a third person to get cash from Higgins's home raises suspicion. But we must remove from our substantial-basis determination the sheriff's assertion

---

[9] Higgins complains that abstract of the sheriff's testimony reveals a reckless disregard for the truth. *See State v. Groff*, 323 N.W.2d 204, 206–08 (Iowa 1982) (discussing *Franks* standard); *see also Franks*, 438 U.S. at 155–56. Higgins asserts the sheriff knew he worked as a mechanic out of his garage and thus had legitimate income. But the record does not show the sheriff had this knowledge when he applied for the search warrant. So we cannot address Higgins's *Franks* claim.

Higgins had $2500 "readily available" to bond out Straight.  *See State v. McNeal*, 867 N.W.2d 91, 103 (Iowa 2015) (allowing reviewing court to "excise" unreliable information presented in application for search warrant).  The sheriff provided the issuing magistrate no information about who posted the bond for Straight or the source of those funds.

The sheriff explained, based on his training and experience, individuals involved in the distribution of illegal narcotics often possess large sums of cash. But as Higgins underscores, what's missing is information Kanealy followed through with Straight's request to obtain money from Higgins's residence.  The assumption Higgins possessed $2500 at his house and Kanealy used it to pay Straight's bond is without foundation.  Absent that connection, the jail call contributes little to the probable-cause finding.  At most, the call reinforces Straight's confederacy with Higgins.

The jail call did prompt the sheriff to order surveillance of Higgins's residence.  In four days, deputies noted eight short-term visitors.  In his affidavit, the sheriff averred: "The traffic that we have observed at Kole's residence and logged in the past few days shows that he is distributing illegal narcotics out the house."  It is true "constant traffic coming and going from" a residence when the visitors stay for a short time may support a finding of probable cause that drug trafficking is occurring.  *See State v. Sallis*, No. 17-1327, 2019 WL 1055779, at *1 (Iowa Ct. App. Mar. 6, 2019); *see also State v. Pargo*, No. 10-1492, 2012 WL 1058223, at *5 (Iowa Ct. App. Mar. 28, 2012) (identifying "high volume of short-term vehicle and foot traffic" as contributing to substantial basis for probable cause

determination).  But an average of two visitors per day can scarcely be classified as "constant" or "high volume" traffic.

As the district court highlighted at the suppression hearing, law enforcement did not verify that any of the eight visitors left Higgins's house with narcotics.  The deputies took down license plate numbers.  And the sheriff determined four of the six cars that stopped at Higgins's house were registered to people with convictions for possession of drugs or drug paraphernalia.  The sheriff told the magistrate the deputies positively identified five of the visitors.  But the prosecutor later corrected the record, admitting they only identified two guests (one of those being Straight who visited Higgins's house on April 6).  Like the jail call, this short-term traffic contributes less to the magistrate's probable-cause finding than the sheriff promotes in the narrative.

All in all, the sheriff's affidavit lacked facts to support an inference that evidence of drug activity would be found at Higgins's home.  The sheriff wrote that based on his twelve years of "working narcotics" for Greene County, he believed Higgins was distributing illegal drugs out of his Scranton residence.  "An officer's opinion based on his personal experiences as a police officer is a factor for the judge to consider in reviewing an application for a warrant."  *State v. Wells*, 629 N.W.2d 346, 355 (Iowa 2001).  But an affiant's general averment about training and experience *alone* cannot substitute for a sufficient nexus to justify the search of a suspected drug trafficker's residence.  *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994); *United States v. Rios*, 881 F. Supp. 772, 775 (D. Conn. 1995); *see also United States v. Rosario*, 918 F. Supp. 524, 531 (D.R.I. 1996) ("To permit a search warrant based solely upon the self-avowed expertise of a law-

enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.").

Pointing us to the warrant application's shortcomings, Higgins criticizes the deputies for not conducting "controlled buys, trash rips, [or] stops of vehicles" to support the probable-cause finding. To counter that point, the State cites *Godbersen* for the proposition that courts may uphold warrants without "direct" observation. 493 N.W.2d at 855 (citing *Groff*, 323 N.W.2d at 212).

No question, a magistrate may find a nexus to the place to be searched "by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items." *See Groff*, 323 N.W.2d at 212. But in both *Groff* and *Godbersen*, law enforcement offered strong circumstantial evidence in the warrant application that proof of drug trafficking could be found in the place to be searched. In *Groff*, the affidavit disclosed a large field containing marijuana plants in various stages of growth close to the defendant's residence. *Id.* In *Godbersen,* the application noted police arrested a motorist with packages of marijuana "evenly weighed and packaged" in his car; the motorist lived with Godbersen, and both had extensive criminal records. 493 N.W.2d at 855. The magistrate issued the warrant based on an expert opinion that scales and packaging materials for the seized drugs could be found at their residence. *Id.*

Unlike the warrant applications in *Groff* and *Godbersen*, the sheriff's investigation here featured no seized narcotics that could be connected to Higgins's residence by either direct *or* circumstantial evidence.

Without the detection of drugs coming into or going out of Higgins's residence, the State pins its argument for upholding the warrant on "reputation" evidence.[10]  At oral argument, the State ventured the most analogous case to Higgins's situation was *State v. Padavich*, 536 N.W.2d 743 (Iowa 1995).  There, the court held a magistrate may consider a suspect's "history of involvement in the drug trade" when making his or her probable cause determination.  *Padavich*, 536 N.W.2d at 748.  Under *Padavich*, Higgins's conviction for drug possession about six months before the warrant application was a proper consideration in determining probable cause.  But that conviction does not automatically open the door to his house.  *See State v. Kahn*, 555 N.W.2d 15, 18 (Minn. Ct. App. 1996) (holding more than "mere possession" of drugs "is required to demonstrate probable cause that an individual is a dealer and that his home contains evidence or contraband").

After our de novo review of the totality of evidence, we find the affidavit did not offer the magistrate a substantial basis for determining the existence of probable cause.  The jail call by Straight, the smattering of largely unidentified short-term visitors over four days, and the reputation evidence—viewed collectively—"is simply not sufficient to support probable cause for a search warrant."  *See State v. Myers*, 570 N.W.2d 70, 75 (Iowa 1997).  Even after we draw all reasonable inferences, we cannot decide in favor of upholding the search warrant.  The information in the application is insufficient in its totality to provide probable cause to believe drugs would be found inside Higgins's home.  We thus

---

[10] Like the magistrate, we refuse to consider the anonymous tips about Higgins dealing drugs relayed by the sheriff.

find the district court should have suppressed the evidence discovered in executing the search warrant.  We reverse Higgins's convictions and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**